BRAY, P. J.
 

 Motion to dismiss appeal upon ground that the appeal has become moot.
 

 Question Presented
 

 Is Resolution No. 1485 of the city of Sausalito essentially the same as Resolution No. 1475, thereby violating the principle of the referendum process?
 

 Record
 

 April 7, 1959, the council of the city of Sausalito adopted Resolution No. 1474. May 5 it adopted Resolution No. 1475. Thereafter a referendum petition was presented to the council requesting it to either repeal said resolutions or submit the same to a vote of the electors. On June 17, appellant filed in the superior court a petition for writ of mandate to compel the city clerk and the council to consider and act upon said referendum petition, alleging that they refused to do so. The council on July 14 passed Resolution No. 1485. The superior court denied the petition for writ of mandate. It is the appeal from such denial that respondents are seeking to dismiss.
 

 The controversy grows out of a lease made by the State Lands Commission in 1951 to Madden and Lewis Company of 9.2 acres (in 1953 increased to 11.22 acres) of filled breakwater or sandspit on submerged land in Richardson Bay, title to which was in the state.
 
 [1]
 
 The lessee was to use the land for commercial purposes, mainly a yacht harbor and structures and facilities connected thereto. In 1953 (Stats. 1953, chap. 534, p. 1795) the Legislature granted to the city of Sausalito certain tide and submerged lands which included the land above mentioned. The grant recited that it was “ [sjubject to the Madden and Lewis lease.” The term of the lease originally was until February 24,1967, with an option in the lessee to renew for two additional periods of 10 years each. In 1955 the lessee exercised that option and the city extended the lease until 1987. Thereafter Madden and Lewis entered
 
 *117
 
 into certain agreements with Clarence C. Kane and Grace Management Corporation providing for a sublease of these and other premises, for the construction of a restaurant and bar, a de luxe motel, a swimming pool and parking area. On November 7, 1956, the council consented to this sublease. December 18, by Resolution No. 1346, the council extended the term of the Madden lease 20 years after February 24, 1987, and included an additional 4.77 acre parcel. The Kane et al. sublease was cancelled. April 7,1959, Resolution No. 1474 was adopted which approved in principle a proposed sublease from Madden to MacMarin, Inc., final approval reserved until layout oE the area as to buildings, landscape, etc., were approved by the city. May 5, 1959, Resolution No. 1475 was adopted. This consented to a sublease from Madden to MacMarin, Inc., until 2007. July 2, 1959, the attorney general issued opinion i£59/123 in which it questioned the validity of Resolution No. 1475 on two grounds, (1) that the 20-year extension (from 1987 to 2007) set forth in Resolution No. 1346 was so inseparably connected with the Kane et al. sublease that when the latter was terminated the extension of the Madden lease did not survive, and therefore Resolution No. 1475 attempted to consent to a sublease for a period 20 years beyond the term of the main lease; and (2) that the term of the sublease (to 2007) appeared to violate the 50-year limitation in the 1957 grant to Sausalito and general code sections such as sections 718, Civil Code; 37384 and 38385, Government Code. Thereafter and on July 14, Resolution No. 1485 was adopted. No referendum petition was filed as to this resolution.
 

 The Right of Referendum
 

 “It is well settled that the power of initiative and referendum, as exercised in this state, is the exercise by the people of a power
 
 reserved
 
 to them, and not the exercise of a right
 
 granted
 
 to them. Section 1, article IV, of the Constitution expressly so provides. [Citations.] For that reason, and in order to protect the people of this state in the exercise of this reserved legislative power, statutory or charter provisions dealing with the referendum should be afforded the same liberal construction afforded election statutes generally.” (L
 
 ey
 
 v.
 
 Dominguez
 
 (1931), 212 Cal. 587, 593 [299 P. 713];
 
 Whittemore
 
 v.
 
 Seydel
 
 (1946), 74 Cal.App.2d 109, 115 [168 P.2d 212], Thus it is the duty of the courts to jealously guard this right of the people and to prevent any action which would improperly annul that right.
 

 
 *118
 
 Section 1772, Elections Code, provides in effect that when a proper referendum petition is filed with a legislative body, that body must
 
 entirely
 
 repeal the ordinance against which the petition is filed or submit the same to the voters, as there sei forth. “If the legislative body repeals the ordinance or submits the ordinance to the voters and a majority of the voters voting thereon do not vote in favor thereof such ordinance shall not again be enacted by the legislative body for a period of one year after the date of its repeal by the legislative body or disapproval by the voters.”
 

 In this case the council neither repealed the resolutions referred to in the referendum petition nor submitted them to the voters, apparently upon the theory that they are not subject to referendum. Whether they are or not is one of the questions, if not the main question to be determined when the appeal comes before us on the merits. Respondents contend that the appeal has become moot because of the enactment of Resolution No. 1485. Until the appeal itself is heard and for the purposes of this motion, we must assume that referendum does lie as to the resolutions, for if referendum does not lie then the validity of Resolution No. 1485 as being violative of the referendum process would not be an issue. It is necessary, then, for us to determine what is the test of determining whether a second legislative enactment violates the spirit of the referendum process and is essentially the enactment of the same act against which a referendum has been filed, and then to determine whether Resolution No. 1485, by such test, does violate the referendum process.
 

 The test is well settled. Generally, it is whether the second legislative enactment is essentially the same as the first. “It may be conceded that, ordinarily, when an ordinance which has been suspended by a referendum has been repealed by the council, the council cannot enact another ordinance in all essential features like the repealed ordinance; . . . The council may, however, deal further with the Subject matter of the suspended ordinance, by enacting an ordinance essentially different from the ordinance protested against, avoiding, perhaps, the objections made to the first ordinance.”
 
 (In re Stratham,
 
 45 Cal.App. 436, 439-440 [187 P. 986] ; see also
 
 Gilbert
 
 v.
 
 Ashley,
 
 93 Cal.App.2d 414, 415 [209 P.2d 50].) “We think it is correct that the council could not then give life to the dead ordinance by passing it over again, or by passing an ordinance in all essential features like the one against which the petition protested. This would plainly be
 
 *119
 
 to nullify the referendum provisions of the charter. But it is equally clear that the council is not prevented from legislating on the subject-matter of the dead ordinance. It doubtless may, if it acts in good faith and with no intent to evade the effect of the referendum petition, pass an ordinance covering the same subject-matter that is essentially different from the ordinance protested against, avoiding, perhaps, the objections made to the first ordinance.”
 
 (In re Megnella
 
 (1916), 131 Minn. 98 [157 N.W. 991, 992].)
 

 Resolution No. 1485 Essentially the Same as Resolution No. 1475
 

 While Resolution No. 1485 contained matters additional to those in No. 1475, it clearly appears that with one exception, namely, the reduction of the expiration of the term of the lease from 2007 to 2002, Resolution No. 1475 is reenacted in toto. Resolution No. 1485 sets forth that the attorney general’s opinion #59/123, before mentioned, states that the intended uses of the land in the sublease from Madden to MacMarin referred to in Resolution No. 1475 do not violate the trust imposed upon the city by the state grant and that the “current term of the leasehold interest” of Madden expires February 24, 1987, notwithstanding the provisions of Resolution No. 1346 (before mentioned) and that though the correctness of the attorney general’s opinion in this' respect “may be open to question and might not be supported by judicial decision in the event the issue should be litigated,” both Madden and MacMarin have expressed their willingness to accept the termination date of February 24, 2002, instead of February 24, 2007.
 

 The resolution then repeals Resolution No. 1346, and amends paragraph 3 of Resolution No. 1474 to read that the sublease “When finally approved and consented to by the City, shall have a specific termination date, to wit, February 23, A.D. 2002.” It then grants to Madden a 15-year extension of its lease, from February 24, 1987, to February 24, 2002, under the. same terms and conditions of the original lease, except as to a change in the percentum rental. It also included in the Madden lease an additional parcel not included in the lease approved by Resolutions No. 1474 and No. 1475. Then follows an amendment of Resolution No. 1475 changing the lease termination date wherever it appears therein to “ ‘ February 23, A.D. 2002.’
 
 With this sole exception, each and all of the provisions and conditions of said Resolution No. 1475 are hereby adopted, ratified, approved and confirmed.
 

 
 *120
 
 “Section 6. To the extent that any term, condition or provison of this Resolution is in conflict or inconsistent with any term, condition or provision of said sublease between Madden & Lewis .Co. and said MacMarin, Inc.,
 
 the terms, conditions and provisions of both Resolution No. 1475, as hereby amended, and this Resolution shall modify, control, govern and supersede said sublease for all purposes.”
 
 (Emphasis added.)
 

 Lastly is a provision that the resolution shall not be valid until approved by Madden and MacMarin. The resolution is headed “Resolution Repealing Resolution No. 1346, Amending Resolutions No. 1474 and No. 1475, etc.”
 

 Boiled down, Resolution No. 1485 adopts by reference Resolution No. 1475 in its entirety,
 
 [2]
 
 with the sole exception that it reduces the terms of the leases five years, additionally repeals Resolution No. 1474, grants a 15-year extension to the Madden lease and adds additional acreage. But the additional features cannot prevent the resolution from being essentially the same, so far as referendum principles are concerned, as the two resolutions under referendum. No one will contend that the voters signing the referendum petition were doing so because of the extra five-year period in the terms of the leases. Undoubtedly the voters were concerned with the fundamental principle of the resolutions, namely, the leasing of city property for the commercial purposes specified in the resolutions. That principle was identical in the suspended resolutions and in Resolution No. 1485. The referendum process would be completely nullified if, when a referendum petition is filed against a legislative act, the legislative body could by merely amending it in a minor way and adding additional matters, then adopt in its entirety the legislative act objected to in the referendum petition. If such were the law, the council merely by continuous amendment of that act could deprive the voters of ever having an act either repealed or brought to a vote.
 

 No contention is made here that the council was acting in bad faith, but it seems conceded that the council, acting under legal advice, felt that Resolutions No. 1474 and No. 1475 were not subject to referendum and desired to protect against the possibility of illegality in them as suggested by the attorney general’s opinion. However, it is not a question of bad faith but one of the adoption by the council of a resolution, which
 
 *121
 
 so far as it relates to the suspended resolutions and the principles of the referendum brought against them, is practically identical.
 

 Paraphrasing
 
 In re Stratham, supra,
 
 45 Cal.App. 436, 440, the council by Resolution No. 1485 was not enacting an act “essentially different from the . . . [resolutions] protested against,” nor was the council “avoiding . . . the objections made to the first . . . [acts] ” by the voters desiring the referendum.
 

 Section 1772, Elections Code, provides that when the legislative body in response to a referendum petition repeals the ordinance or when the voters fail to approve it at the election, such ordinance shall not again be enacted for a period of one year. It does not expressly provide that in the event the legislative body neither repeals the ordinance nor calls the election, the body may not amend or enact the ordinance within a year. However, inherent in the very principle of the referendum and the spirit of the section, such result necessarily follows, particularly where, as here, the council merely amended the previous acts in a comparatively minor respect so far as the real attack on the prior acts is concerned. If such were not the case, no referendum could ever be brought to a conclusion, because a council could prevent it by recurrent amendments to the disputed legislative act.
 

 Gilbert
 
 v.
 
 Ashley, supra,
 
 93 Cal.App.2d 414, 415, said that when an ordinance was suspended by a referendum the council could not enact another ordinance “in all its essential features” like the repealed ordinance. Here Resolutions No. 1474 and No. 1475 were renenaeted in all their essential features in Resolution No. 1485. Those essential features were the approval of the proposed commercial development and the granting of the lease and sublease.
 

 Assuming, then, that Resolutions No. 1474 and No. 1475 are subject to referendum and that the proceedings on referendum were regular (questions we do not determine now), the adoption of Resolution No. 1485, containing essentially all the provisions of those two resolutions, would be an unwarranted interference with the referendum process, and hence this appeal is not moot.
 

 The motion is denied.
 

 Tobriner, J., and Duniway, J., concurred.
 

 [1]
 

 The history of the events occurring prior to the adoption of Resolution No. 1474 is taken from the attorney general’s opinion #59/123 and is used merely to set the stage for the action taken thereafter.
 

 [2]
 

 A prior legislative act may be adopted by reference in a subsequent act. See 45 Cal.Jur.2d, p.
 
 608, 90.