Filed 4/5/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPEALATE DISTRICT

| | |
|---|---|
| COUNTY OF KERN,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>T.C.E.F., INC., et al.,<br><br>    Defendants and Appellants. | F070813<br><br>(Super. Ct. No. CV-282021)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  David R. Lampe, Judge.

Law Office of Abraham A. Labbad and Abraham A. Labbad for Defendants and Appellants.

Theresa A. Goldner, County Counsel, Charles F. Collins, Deputy County Counsel; Hogan Law and Michael M. Hogan for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

The County of Kern (County)[1] sued the defendants to enjoin the operation of a medical marijuana dispensary in an unincorporated area of Kern County. The trial court granted a preliminary injunction. Defendants appealed.

The unusual facts of this case involve the referendum power of county voters to protest a newly adopted ordinance pursuant to Elections Code section 9144.[2] When such a protest petition is received, a county may "entirely repeal the ordinance" pursuant to section 9145 or present the ordinance to the voters at the next election. We interpret the phrase "entirely repeal the ordinance" to mean that a board of supervisors must revoke the protested ordinance in all its parts and must not take additional action that has the practical effect of implementing the essential feature of the protested ordinance. We publish this opinion because the application of section 9145 to a board's additional action has not been addressed in an appellate decision.

*Historical Background.* In 2009, the County enacted an ordinance effectively authorizing medical marijuana dispensaries in commercially zoned areas, which include the defendants' location in Rosamond, California. In 2011, the County approved a new ordinance banning medical marijuana dispensaries throughout the County's jurisdiction. The new ordinance would have repealed and replaced the 2009 ordinance if it had become effective. The new ordinance banning dispensaries did not become effective

---

[1] This opinion uses "County" to refer to the governmental entity and "Kern County" to refer to the geographical area.

[2] Elections Code section 9144 provides that county voters can prevent an ordinance from becoming effective by presenting a petition (1) protesting the adoption of the ordinance before the effective date of the ordinance and (2) containing voter signatures equal in number to at least 10 percent of all votes casts within the county in the last gubernatorial race. A valid protest petition suspends the ordinance and requires the board of supervisors to reconsider the ordinance. All unlabeled statutory references are to the Elections Code.

2

because it was suspended by operation of section 9144 when County received a valid protest petition from its voters.

County's board of supervisors responded in 2012 to the protest petition by (1) presenting County voters with an alternate ordinance called referendum Measure G and (2) adopting a separate repeal ordinance that stated "Chapter 5.84 of Title 5 of the Kern County Ordinance Code is hereby repealed in its entirety." Chapter 5.84 was where the 2011 dispensary ban would have been codified and where the predecessor 2009 ordinance, authorizing dispensaries in commercially zoned areas, was set forth. In County's view, its 2012 repeal ordinance rescinded all prior ordinances codified in Chapter 5.84, including its 2011 attempted ban of medical marijuana dispensaries *and* the 2009 ordinance that authorized dispensaries in commercial zones.

Measure G was approved by 69 percent of the vote in the June 2012 election. Its provisions authorized dispensaries to operate in industrial zones and subjected them to several restrictions. After the election, some dispensaries located in commercially zoned areas filed an action challenging the validity of Measure G, alleging the environmental review required by the California Environmental Quality Act (CEQA; Pub. Resources Code, § 21000 et seq.) had not been completed. In that lawsuit, the trial court concluded a CEQA violation had occurred and invalidated Measure G. We recently upheld the invalidation of Measure G in case No. F070043.

*The Injunction.* The foregoing history of County's ordinances is relevant to the legal basis for the preliminary injunction that directs defendants to cease and desist operating a medical marijuana dispensary in a commercially zoned area of Rosamond. County argued that, after Measure G was invalidated and the repeal ordinance was in effect, no ordinance permitted medical marijuana dispensaries to operate within County's jurisdiction and, without express authorization, dispensaries are prohibited. (See *City of Corona v. Naulls* (2008) 166 Cal.App.4th 418, 433 [dispensaries were an impermissible

3

land use because they were expressly permitted by city's municipal code].) In response, defendants argue the repeal ordinance was illegal and, based on this illegality, contend the 2009 ordinance remains in effect and authorizes their dispensary.

*Issues Presented.* The dispute over the continued effect of the 2009 ordinance requires this court to interpret section 9145 and apply that interpretation to an unusual set of facts. Specifically, did County "entirely repeal the ordinance against which a [protest] petition [wa]s filed" (§ 9145) when it repealed the ordinance banning dispensaries, but also repealed the 2009 ordinance authorizing dispensaries?

*Conclusions.* We interpret the phrase "entirely repeal the ordinance" to mean that a board of supervisors must (1) revoke the protested ordinance in all its parts and (2) not take additional action that has the practical effect of implementing the essential feature of the protested ordinance. Applying this interpretation, we conclude the board of supervisors did more than entirely repeal the protested ordinance banning dispensaries when it revoked that ordinance and took the additional action of repealing the 2009 ordinance, which authorized dispensaries. The practical effect of repealing the 2009 ordinance was to *prohibit* dispensaries, which was essentially the same as the *ban* of dispensaries protested by voters. Therefore, we conclude County violated section 9145 by repealing the 2009 ordinance and, as a result, we regard the 2009 ordinance as remaining in full force and effect. Accordingly, defendants' dispensary, which is located in a commercial zone, remains an authorized use and County cannot establish a likelihood of succeeding on the merits of its claim that defendants were operating an unauthorized dispensary. It follows that County has not established the first factor necessary for the grant of a preliminary injunction.

We therefore reverse the order granting the preliminary injunction.

4

**FACTS**

*Parties*

County filed this litigation to obtain a preliminary and permanent injunction against the defendants' operation of a medical marijuana dispensary in Rosamond. County alleged that its zoning ordinances do not authorize medical marijuana dispensaries to operate in the unincorporated areas of Kern County and, because dispensaries are not specifically permitted, they are prohibited by County's zoning ordinances and constitute a public nuisance per se.

The named defendants are T.C.E.F., Inc., a California corporation that did business as All Green Collective; Tony F. Monassar;[3] and Jabe T. Satterfield. Only Monassar and Satterfield remain as appellants before this court because we granted County's motion to dismiss T.C.E.F., Inc.

*State Statutes*

The state statutes in place before County adopted its first ordinance addressing medical marijuana dispensaries included the Compassionate Use Act of 1996 (CUA) (Health & Saf. Code, § 11362.5) and the Medical Marijuana Program Act (MMPA) (Health & Saf. Code, § 11362.7 et seq.) The CUA was adopted in 1996 when California's voters approved Proposition 215. The MMPA was enacted by the Legislature in 2003 for the purpose of clarifying the scope of the CUA, promoting uniform and consistent application of the CUA, and enhancing the access of patients and caregivers to medical marijuana through collective, cooperative cultivation projects. (Stats. 2003, ch. 875, § 1(b), p. 5013.)

---

[3]    Tony F. Monassar is referred to as Faiz T. Munassar in case No. F070043. It appears his surname also can be spelled "Munnassar."

5

*County Ordinances*

In July 2006, County adopted its first medical marijuana dispensary ordinance, which was codified as chapter 5.84 to title 5 of the Kern County Ordinance Code (Ordinance Code). The chapter was entitled "Medical Marijuana Dispensaries." Under the ordinance, medical marijuana dispensaries granted a license by the County's sheriff's department were allowed to operate if they followed certain operating and record keeping requirements. The ordinance limited the number of licensed dispensaries to six and treated each dispensary "as a pharmacy for zoning purposes." (Ordinance Code, §§ 5.84.220, subd. A & 5.84.230)

*2009 Ordinance*

In March 2009, County adopted Ordinance No. G-7849, which repealed all of the provisions in the 2006 ordinance and set forth a new section 5.84.010 in Chapter 5.84 of the Ordinance Code (2009 Ordinance). Under the 2009 Ordinance, most of the restrictions on medical marijuana dispensaries were removed. The new section 5.84.010 of the Ordinance Code stated that a medical marijuana dispensary could not be located within 1000 feet of a school and continued to treat each dispensary "as a pharmacy for zoning purposes."

Twice in 2010, County adopted moratoria on the establishment of any new medical marijuana dispensaries and prohibited existing medical marijuana dispensaries from relocating within Kern County. When County adopted the first moratorium, it recognized that at least 30 medical marijuana dispensaries were legally established and operating in Kern County. Other than the 2009 Ordinance's requirement that the dispensaries be located more than 1000 feet from a school, these dispensaries were subject to little regulation by County. While the second moratorium was in effect, County held workshops where the public could attend and express their opinions concerning medical marijuana dispensaries and County's policies relating to dispensaries.

On August 2, 2011, County held a public hearing on another extension of the moratorium. The staff report for this public hearing discussed the proposed extension and also proposed ordinances to ban medical marijuana dispensaries and outdoor cultivation of marijuana. At the conclusion of the hearing, County's board of supervisors voted to extend the moratorium for one year.

*2011 Ordinance*

A week later, another public hearing was held on the proposed ordinance banning dispensaries. At the end of the hearing, County adopted Ordinance No. G-8191 (Dispensary Ban Ordinance), which stated that "Chapter 5.84 of Title 5 of the Ordinance Code of County of Kern is hereby amended in its entirety to read as follows" and set forth the text of new sections 5.84.010 through 5.84.080. The new sections provided that "[a]ny operation of a Medical Marijuana Collective is prohibited in the County" (Ordinance Code, § 5.84.040) and declared the operation of a medical marijuana dispensary to be a public nuisance subject to abatement and administrative penalties. (Ordinance Code, § 5.84.060.) The Dispensary Ban Ordinance stated it would take effect on September 9, 2011, which was 30 days after its adoption.

*2011 Protest Petition*

Prior to the effective date of the Dispensary Ban Ordinance, County received a referendum petition protesting certain of its provisions. (See *Dye v. Council of the City of Compton* (1947) 80 Cal.App.2d 486, 490 [referendum power extends not only to whole ordinance, but also its sections and parts].) The petition included 26,335 signatures. A County official examined the petition and certified that it contained a sufficient number of signatures. There is no dispute that the protest petition was both timely and valid. As a result, four sections of the Dispensary Ban Ordinance were suspended by operation of law pursuant to section 9144. The suspended sections stated the purpose and intent of the ordinance, banned medical dispensaries, banned edibles containing medical marijuana,

7

and declared medical marijuana dispensaries to be a public nuisance subject to abatement. Pursuant to section 9145, County was required to (1) entirely repeal the Dispensary Ban Ordinance or (2) submit that ordinance to the voters at the next regularly scheduled county election or at a special election called for that purpose.

*County's Response to Protest Petition*

On September 27, 2011, and February 21, 2012, County held public hearings to address its options for responding to the referendum petition and to receive public input on the issues presented. The staff report for the latter hearing (1) discussed recent legislation and judicial decisions addressing the regulation of medical marijuana dispensaries; (2) proposed an alternative ordinance that would restrict and regulate medical marijuana dispensaries, rather than ban them outright;[4] and (3) set forth options for the board of supervisors to consider. The first option was to repeal the Dispensary Ban Ordinance. The second option was to place the Dispensary Ban Ordinance on the June 5, 2012, primary election ballot. The third option was to repeal the Dispensary Ban Ordinance and place the alternative ordinance (i.e., Measure G) on the June 5, 2012, primary election ballot. The fourth option was to place *both* the Dispensary Ban Ordinance and the alternative ordinance on the June 5, 2012, primary election ballot.

At the hearings, counsel for County informed the board of supervisors that, if they decided to repeal the ban, the repeal would affect the board's ability to legislate on the

---

[4]    The proposed alternative ordinance was named Measure G when it was presented to the voters. Among other things, Measure G (1) restricted the location of medical marijuana dispensaries to Medium (M-2 PD) and Heavy (M-3 PD) industrial districts; (2) required dispensaries to be located at least one mile away from all schools, daycare centers, parks, churches, and other dispensaries; and (3) required dispensaries to operate in compliance with certain development and performance standards. These standards banned the consumption of marijuana at the dispensary's premises, the use of portable structures, and patio seating at or next to the dispensary. The performance standards addressed matters such as trash dumpsters, off-street parking, exterior lighting, and signage.

8

subject in the future, since the board could not enact another ordinance in all essential features like the repealed ordinance for at least a year following the date of the repeal.[5]  A supervisor asked counsel for County about what the status would be if the board repealed the Dispensary Ban Ordinance and the voters did not approve Measure G.

> "MS. GOLDNER:  [I]f you repealed the existing -- the protested ordinance and you put the alternative ordinance on the ballot and the voters did not approve the alternative ordinance, there would be no ordinance in Kern County.[6]
>
> "SUPERVISOR MAGGARD:  Other than the moratorium?
>
> "MS. GOLDNER:  That's correct.
>
> "SUPERVISOR WATSON:  And so then all of the current dispensaries would be in place and as long as we had a moratorium and if that expires, then it would be pretty much a free market?
>
> "MS. GOLDNER:  Supervisor Watson, through the Chair, I don't know if I want to agree that it would be a free market.  What it would mean is that there would be -- once the moratorium expires, if the alternative ordinance is not approved by the voters, in those circumstances it would mean that there would be no ordinance on the books, so to speak in Kern County, which would mean that medical marijuana dispensaries, collectives and co-ops would not be permitted uses.  And by the term 'permitted uses,' I mean would not be an allowed use under our zoning ordinance, which would mean that it would be a matter of code enforcement if your Board wished to have them all shut down."

At the conclusion of the February 21, 2012, hearing, County's board of supervisors chose to place Measure G on the June 5, 2012, primary election ballot.  A

---

**5**    County Counsel's reference to a one-year period is based on cases discussing section 9241, a statute that applies to city ordinances and mentions a one-year period. Section 9145 does not refer to a one-year period.  (See fn. 10, *post*.)

**6**    County Counsel's description of the consequences of repealing the protested ordinance is not accurate because "there would be no ordinance in Kern County" only if the board also repealed the existing version of chapter 5.84 of the County Ordinance (i.e., the provisions of the 2009 Ordinance).

9

week later, also in response to the referendum petition, the board of supervisors adopted Ordinance No. G-8257 (Repeal Ordinance), which stated that "Chapter 5.84 of Title 5 of the Kern County Ordinance Code is hereby repealed in its entirety." The Repeal Ordinance also stated its provisions would take effect on March 30, 2012. In County's view, the Repeal Ordinance left no provision in the Ordinance Code allowing medical marijuana dispensaries to exist in any unincorporated area of Kern County.

At the June 5, 2012, primary election, 69,530 voters out of 100,698 cast their ballots to approve Measure G. As a result, County's board of supervisors directed the provisions of Measure G be added to the Ordinance Code as chapter 19.120 of title 19—the title referred to as the "County Zoning Ordinance."

*Measure G and CEQA Challenge*

In August 2012, about 45 days after Measure G became effective, a group of plaintiffs who were operating medical marijuana dispensaries outside the industrial zones approved by Measure G filed a lawsuit alleging County's adoption of Measure G violated CEQA. The group requested that Measure G be vacated and set aside.

In November 2013, the trial court in the CEQA lawsuit determined that County had violated CEQA when it adopted Measure G and issued a peremptory writ of mandate directing County to bring Measure G into compliance with CEQA. In February 2014, the trial court determined that County's attempt at CEQA compliance was inadequate and stated from the bench that it would invalidate Measure G. In April 2014, the trial court's written order invalidating Measure G was filed.[7]

A few days later, on April 30, 2014, County personnel and three sheriff's deputies visited defendants' dispensary on Diamond Street in Rosamond and delivered an

---

**7** The trial court's invalidation order was appealed to this court in case No. F070043. On March 29, 2016, we upheld the trial court's invalidation of Measure G, concluding County's reliance on the common sense exemption was not justified by the evidence presented.

inspection warrant. County personnel interviewed six people who stated that they worked or volunteered at the dispensary and observed (1) two safes containing approximately 30 pounds of processed marijuana, (2) a room where food and beverages containing marijuana were displayed, and (3) 26 growing marijuana plants. Based on these observations, County personnel concluded that a functioning dispensary was open for business at that location.

## PROCEDURAL HISTORY

In May 2014, after inspecting defendants' dispensary, County filed a civil complaint against defendants. County sought preliminary and permanent injunctions, nuisance abatement and civil penalties. The complaint alleged defendants had created a public nuisance and were violating County ordinances by operating a marijuana dispensary in Rosamond, California. The complaint alleged Monassar was the owner and operator of the marijuana dispensary and Satterfield owned the real property where the dispensary was located.

In July 2014, defendants demurred to the complaint. In August 2014, County filed a motion for preliminary injunction with supporting declarations and a request for judicial notice. Defendants' written opposition to the motion argued that their demurrer must be heard and decided before the motion for preliminary injunction could be granted. This argument implies that County had no probability of success on the merits because its complaint failed to state a cause of action. In addition, defendants explicitly argued that County "has fallen well short of carrying its burden" because "[n]either imminent harm nor the potential for harm to the community and the public at large has been substantiated by [County's] complaint and motion."

County's reply argued that the court had the discretionary authority to grant the motion for preliminary injunction while the demurrer was pending, particularly where the

11

motion was supported by multiple declarations and did not rely solely on a verified complaint.

In October 2014, the trial court held a hearing on the motion for preliminary injunction and took the matter under submission. A week later, the trial court issued a minute order stating (1) the motion was substantially unopposed, (2) defendants' opposition asked the court not to rule on the motion until the pleadings had been tested against the demurrer, and (3) County had cited cases saying that trial courts may issue a preliminary injunction while a demurrer is pending. The minute order stated County's motion for a preliminary injunction was granted and directed County to prepare a written order pursuant to California Rules of Court, rule 3.1312.

On November 12, 2014, the trial court held a hearing on defendants' demurrer to County's first amended complaint. The court considered the merits of the demurrer and overruled it.

On November 26, 2014, the court signed and filed the order prepared by County granting the preliminary injunction. Thus, the injunction order was not signed until after the trial court overruled the demurrer. The injunction directed defendants to cease and desist from storing, distributing, selling or giving away marijuana at the property on Diamond Street. It also directed defendants to cease cultivating marijuana in quantities beyond the limits set by County ordinance for medical use (i.e., 12 plants).

Defendants responded to the trial court's decision to grant the preliminary injunction by filing a petition for writ of mandate with this court, which we assigned case No. F070441 and summarily denied. In December 2014, defendants requested the trial court to stay the preliminary injunction, which that court denied. The same month, defendants filed a federal civil rights lawsuit and unsuccessfully attempted to obtain a temporary restraining order against enforcement of the preliminary injunction.

12

On December 29, 2014, defendants filed a notice of appeal to challenge the preliminary injunction and the trial court's denial of the request for stay. In January 2015, defendants filed a petition for writ of supersedeas or other appropriate stay with this court. Two days later, we stayed enforcement of the preliminary injunction and directed County to respond to the petition for writ of supersedeas. After receiving County's response and granting its request for judicial notice, this court entered an order issuing a writ of supersedeas staying the order granting the preliminary injunction and any enforcement proceedings until the appeal was determined on its merits.

In February 2016, this court entered an order dismissing T.C.E.F., Inc., from the appeal and vacating the stay of enforcement as to that defendant only.[8]

## DISCUSSION

I.      BASIC PRINCIPLES OF LAW

      A.      <u>Criteria for Granting a Preliminary Injunction</u>

Pursuant to Code of Civil Procedure section 526, trial courts are authorized to issue injunctions during the litigation. A trial court deciding whether to issue a preliminary injunction weighs two interrelated factors—the likelihood the moving party will prevail on the merits at trial *and* the relative balance of interim harms that are likely to result from the granting or denial of preliminary injunctive relief. (*White v. Davis* (2003) 30 Cal.4th 528, 554; *Cohen v. Board of Supervisors* (1985) 40 Cal.3d 277, 286.)

---

[8]     The corporation is not in good standing with the California Franchise Tax Board and its corporate powers were suspended by the California Secretary of State in September 2013, well before this lawsuit was filed. (See *Palm Valley Homeowners Assn., Inc. v. Design MTC* (2000) 85 Cal.App.4th 553, 556 [suspended corporations are "disabled from participating in litigation activities"]; Corp. Code, § 2205; Rev. & Tax. Code, § 23301.) Also, counsel for appellants did not respond to our inquiry about whether the principals for the corporation intended to revive its corporate powers. (See generally, *Bourhis v. Lord* (2013) 56 Cal.4th 320, 323 [revival of corporate powers validates notice of appeal filed when corporate powers were suspended]; Rev. & Tax. Code, § 23305 [certificate of revivor].)

Generally, weighing these factors lies within the broad discretion of the superior court. (*Ibid*.; *Butt v. State of California* (1992) 4 Cal.4th 668.)

B.    Standard of Review

1.    *Abuse of Discretion*

A superior court's ruling on an application for a preliminary injunction is reviewed for an abuse of discretion. (*Cohen v. Board of Supervisors*, *supra*, 40 Cal.3d at p. 286.) Appellate courts typically describe the abuse of discretion standard as being met when the lower court exceeds the bounds of reason or contravenes the uncontradicted evidence. (*Continental Baking Co. v. Katz* (1968) 68 Cal.2d 512, 527.) However, this description is not complete because the abuse of discretion standard is not unified and a more specific rule might apply once the appellate court has identified the particular aspect of the trial court's determination being challenged. (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711 (*Haraguchi*).)

2.    *Specific Ways Discretion Can Be Abused*

First, the abuse of discretion standard does not allow trial courts to apply an incorrect rule of law. (See *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems*, *Inc.* (1999) 20 Cal.4th 1135, 1144 ["the trial court's discretion is limited by the applicable legal principles"].) Consequently, a trial court's resolution of a question of law is subject to independent (i.e., de novo) review on appeal. (*Haraguchi*, *supra*, 43 Cal.4th at p. 712; *Smith v. Adventist Health System/West* (2010) 182 Cal.App.4th 729, 739 (*Smith*).) For example, issues of statutory construction are questions of law subject to independent review. (*Jauregui v. City of Palmdale* (2014) 226 Cal.App.4th 781, 804.)

Second, the abuse of discretion standard does not allow trial courts to make express or implied findings of fact without sufficient evidentiary support. The sufficiency of the evidence for a trial court's express or implied findings is reviewed

14

under the deferential substantial evidence standard. (*Haraguchi*, *supra*, 43 Cal.4th at p. 711; *Smith*, *supra*, 182 Cal.App.4th 739.)

Third, when the challenged determination involves the trial court's weighing of the interrelated factors, the result of that weighing process generally will be upheld on appeal so long as the trial court did not exceed the bounds of reason or contravene the uncontradicted evidence. (*Continental Baking Co. v. Katz*, *supra*, 68 Cal.2d at p. 527; *People v. Jordan* (1986) 42 Cal.3d 308, 316; *Bank of America, N.A. v. Superior Court* (2013) 212 Cal.App.4th 1076, 1089 [abuse of discretion standard measures whether, given the established evidence, the trial court's decision falls within the permissible range of options set forth by the applicable legal criteria].)

### *3. Establishing an Abuse of Discretion*

The party challenging the trial court's order to grant or deny a preliminary injunction has the burden of making a clear showing of such an abuse. (*Smith*, *supra*, 182 Cal.App.4th at p. 749.) When the order *grants* a preliminary injunction, the restrained party need only show that the trial court abused its discretion as to one of the two factors. (*Ibid.*) Thus, it is well established that granting a preliminary injunction without a showing of a likelihood of success on the merits is an abuse of discretion and will be reversed. (*Aiuto v. City & County of San Francisco* (2011) 201 Cal.App.4th 1347, 1355.) Furthermore, when the likelihood of prevailing on the merits depends on a question of law, an appellate court independently decides that question of law and, thus, whether there was a possibility of the moving party succeeding on the merits. (*Ibid.*)

## II. LIKELIHOOD OF SUCCESS—APPLICABLE ORDINANCE

### A. Contentions

The parties' dispute whether County has a possibility of success on the merits of its claim that defendants were operating an unauthorized medical marijuana dispensary. This dispute has been narrowed by our decision in case No. F070043, where we upheld

15

the invalidation of Measure G under CEQA. With Measure G no longer in effect, the legal question presented is which ordinance provisions, if any, regulate the operation of medical marijuana dispensaries in the unincorporated areas of Kern County.

Defendants contend that the 2009 Ordinance was the only operative County law addressing dispensaries in effect after Measure G was invalidated. Defendants argue the 2009 Ordinance treats medical marijuana dispensaries as pharmacies for zoning purposes and, therefore, their dispensary is an authorized use at its present location.

County argues that the 2009 Ordinance, which was codified in chapter 5.84 of the Ordinance Code, was repealed in its entirety when the board adopted the Repeal Ordinance. In County's view, because "Measure G was declared invalid, there is no ordinance which authorizes the use of property for a medical marijuana dispensary. As a result, medical marijuana dispensaries are not a permitted use in any zone under the Zoning Ordinance of the Kern County Ordinance Code." As support, County cites *City of Corona v. Naulls*, *supra*, 166 Cal.App.4th 418 for the proposition that under its type of zoning ordinance "where a particular use of land is not expressly enumerated in a city's municipal code as constituting a *permissible* use, it follows that such use is *impermissible*." (*Id*. at p. 433.)

Defendants' reply to County's claim that the 2009 Ordinance was repealed by arguing the purported repeal unlawfully exceeded the powers of the board of supervisors, which powers are limited by the Elections Code provisions governing protest petitions and voter referenda.

B.     Sections 9144 and 9145

The parties' dispute over whether the 2009 Ordinance was repealed or remains in effect presents questions about the meaning and application of section 9145, which governs a county's reaction to a petition protesting the adoption of an ordinance. The

16

context for section 9145 is established by section 9144, which addresses the presentation of protest petitions to county officials.  Section 9144 provides in relevant part:

> "If a petition protesting the adoption of an ordinance is presented to the board of supervisors prior to the effective date of the ordinance, the ordinance shall be suspended and the supervisors shall reconsider the ordinance."

After reconsidering an ordinance subject to a protest petition, a board of supervisors might decide to rescind (i.e., repeal) the ordinance.  Alternatively, the board might decide to submit the protested ordinance to the voters in accordance with section 9145, which provides:

> "If the board of supervisors does not entirely repeal the ordinance against which a petition is filed, the board shall submit the ordinance to the voters either at the next regularly scheduled county election occurring not less than 88 days after the date of the order, or at a special election called for that purpose not less than 88 days after the date of the order.  The ordinance shall not become effective unless and until a majority of the voters voting on the ordinance vote in favor of it."

Based on the parties' arguments and the facts of this case, the primary issue of statutory construction before this court relates to whether the board of supervisors "entirely repeal[ed] the ordinance against which a petition [wa]s filed." (§ 9145.)  As background for our analysis of this text, we first describe how section 9144 applies to the events that occurred before section 9145 became applicable.

### 1.    *"Ordinance Shall Be Suspended"*

Section 9144 provides that "the ordinance shall be suspended" upon a county's timely receipt of a protest petition.  The absence of a statutory provision defining this phrase or its components leads us to presume the Legislature used the word "suspended" in its ordinary sense and, consequently, we may refer to that word's dictionary definition to ascertain its ordinary, usual meaning. (*Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1121-1122.)  "Suspended" is synonymous with temporarily

17

debarred, inactive, inoperative and held in abeyance. (Webster's 3d New Internat. Dict. (1993) p. 2303, col. 2; see *Olds & Whipple v. U.S.* (Ct. Cl. 1938) 22 F.Supp. 809, 819 [common meaning of "suspended" is "held in abeyance, temporarily inoperative, arrested, interrupted, stopped for a time"].)

Accordingly, when applied to the facts of this case, the phrase "the ordinance shall be suspended" means that the Dispensary Ban Ordinance was prevented from becoming operative by County's timely receipt of the valid protest petition. In other words, by operation of section 9144, the ordinance was rendered temporarily inoperative.

During the period that an ordinance is kept from becoming operative, section 9144 states that the board of supervisors "shall reconsider" the ordinance. Thus, reconsideration is mandatory. (See § 354 ["'shall'" is mandatory].) After reconsideration, the board of supervisors has two options for dealing with the protested ordinance.[9] (Cf. *Lindelli v. Town of San Anselmo* (2003) 111 Cal.App.4th 1099, 1109 [two options under § 9241, the statute that addresses protested municipal, as opposed to county, ordinances].)

First, the board may "entirely repeal the ordinance." (§ 9145.) If that option is chosen, the temporary suspension is superseded by the repeal and the ordinance never will have any force or effect.

Second and alternatively, the board may submit the ordinance to the voters at the next election or at a special election. (§ 9145.) If a majority of voters approve the ordinance, it becomes effective and the suspension ends. (*Ibid.*) Without voter approval,

---

[9]    County argues that the board has more than two options for responding to a protest petition, because it also may (1) challenge the validity of the protest petition or (2) elect to repeal a protested ordinance *and take additional action* with respect to the subject matter of the protested ordinance. Under the facts of this case, County regards the board's repeal the 2009 ordinance as valid additional action.

18

the "ordinance shall not become effective." (*Ibid.*) Therefore, when voters reject an ordinance, the temporary suspension becomes permanent by operation of law.

### 2. *"Entirely Repeal the Ordinance"*

In this case, the board of supervisors reconsidered the protested ordinance as required by section 9144. After its reconsideration, the board chose to (1) repeal the Dispensary Ban Ordinance and (2) repeal the 2009 Ordinance. The parties dispute whether the board's combined actions satisfied, or exceeded, section 9145's requirement to "entirely repeal the ordinance."

The parties agree that the statutory phrase "entirely repeal the ordinance" is unambiguous when viewed in the abstract—that is, outside the context of a particular factual scenario. The term "entirely" is synonymous with wholly, completely, fully. (Webster's 3d New Internat. Dict., *supra*, p. 758, col. 1; see Black's Law Dict. (9th ed. 2009) p. 612 ["entire" means complete in all its parts].) The term "repeal" generally means to rescind or revoke and, more particularly, refers to an abrogation of an existing law by express legislative act. (Black's Law Dict., *supra,* p. 1413.) Therefore, the plain meaning of the phrase "entirely repeal the ordinance" is to wholly rescind or revoke the ordinance, which is the equivalent of rescinding the ordinance in all its parts.

The parties disagree how this meaning applies to the facts of this case. (See *Scheenstra v. California Dairies, Inc.* (2013) 213 Cal.App.4th 370, 391 [*application* of statutory construction to a particular set of facts poses a question of law subject to independent review].) Our request for supplemental letter briefs asked the parties whether the phrase "entirely repeal" required a return to the status quo ante—that is, the situation that existed before the protested ordinance was adopted. (See Black's Law Dict., *supra*, p. 1542 [definition of status quo ante].) County responded by arguing that a return to the status quo ante would comply with the statute, but is not required.

19

Defendants contend a return to the status quo ante is required and a failure to do so undermines the primary objective of sections 9144 and 9145.

Before addressing these arguments about how the statutory phrase "entirely repeal the ordinance" relates to a return to the status quo ante, we consider some basic principles of statutory construction that are relevant to interpreting section 9145.

### 3. Guiding Principles

A general principle of statutory construction is that courts do not place form over substance where doing so defeats the objective of a statute, especially a statute designed to protect a public interest. (*Epstein v. Hollywood Entertainment Dis. II Business Improvement Dist.* (2001) 87 Cal.App.4th 862, 872; see Civ. Code, § 3528 [substance over form principle].) It is an "established principle of the law that the substance and not the mere form of transactions constitutes the proper test for determining their real character. If this were not true it would be comparatively simple to circumvent by sham the provisions of statutes framed for the protection of the public. This the law does not permit." (*People v. Jackson* (1937) 24 Cal.App.2d 182, 192, disapproved on another ground in *People v. Ashley* (1954) 42 Cal.2d 246.)

We conclude the referendum powers of local voters that are defined and protected by sections 9144 and 9145 affect the public interest and are important. First, the referendum powers have been *reserved* to the people and are protected by the California Constitution. (Cal. Const., art. IV, § 1; *Martin v. Smith* (1959) 176 Cal.App.2d 115, 117.) Sections 9144 and 9145 were enacted pursuant to the constitutional provision stating that "referendum powers may be exercised by the electors of each city or county under procedures that the Legislature shall provide." (Cal. Const., art. II, § 11, subd. (a).) Second, the referendum power of local voters is significant because it "guarantees to the citizens an ultimate check on legislative power." (*Midway Orchards v. County of Butte* (1990) 220 Cal.App.3d 765, 779 (*Midway Orchards*).) Third, the referendum power is

20

intertwined with a Californian's right to vote and the right to vote is a fundamental constitutional right. (See *Board of Supervisors v. Local Agency Formation Com.* (1992) 3 Cal.4th 903, 913 ["right to vote may be the most fundamental of all"].) Consequently, we conclude that sections 9144 and 9145 are designed to protect a public interest and "should be liberally construed in favor of the power of referendum." (*Midway Orchards, supra,* at p. 774.)

### 4. The Status Quo Ante and Essential Feature

Our request for supplemental briefs asked whether "entirely repeal" should be construed to require a return to the status quo ante. County argued this construction was not appropriate because a return to the status quo ante was not *required*. In County's view, a board of supervisors has the authority to take additional action and need not return to the status quo ante in every particular. This view has some support in case law addressing the authority of a city council to enact another ordinance after repealing a protested ordinance. "'[O]rdinarily, when an ordinance which has been suspended by a referendum has been repealed by the council, the council cannot enact another ordinance in all essential features like the repealed ordinance ….'" (*Martin v. Smith*, *supra*, 176 Cal.App.2d at p. 118, quoting *In re Stratham* (1920) 45 Cal.App. 436, 439.)[10] Conversely, a city council is allowed to "'deal further with the subject matter of the suspended ordinance, by enacting an ordinance essentially different from the ordinance

---

[10]    In *Martin v. Smith*, *supra,* 176 Cal.App.2d 115 the court referred to former section 1772, the predecessor of section 9241, which addresses city, not county, ordinances. In *In re Stratham*, the court cited no statute, but apparently relied on common law rules applicable to ordinances. (*In re Stratham*, *supra*, 45 Cal.App. at p. 440, citing *In re Megnella* (1916) 133 Minn. 98, 99 [157 N.W. 991] [City ordinance challenged by referendum petition. Issue was whether subsequent ordinance was different in any essential features from the challenged ordinance.]) Section 9241 is more detailed than section 9145 because it includes a sentence that the ordinance repealed by the board and rejected by the voters "shall not again be enacted by the legislative body for a period of one year."

protested against ….'" (*Martin v. Smith*, *supra*, 176 Cal.App.2d at p. 118.) This legal standard does not require a return to the status quo ante in every particular, allows for some changes, but significantly limits the authority of a city council to make changes that address the subject matter of the protested ordinance.

The facts of this case do not involve a city council or a new legislative enactment that can be compared, provision by provision, with the protested ordinance. Nonetheless, we incorporate the concept of "essential features" into our statutory construction because it is reasonable to regard the protest petition as a challenge or legislative check aimed at the essential (i.e., important, principal) subject matter of the protested ordinance---the ban on medical marijuana dispensaries. We adopt a relatively narrow legal test as that test is sufficient to deal with the facts of this case, while serving the statutory purpose of protecting the referendum power. We expressly leave open the question of whether a broader construction of section 9145 would be appropriate in other circumstances. (Cf. *Acosta v. Los Angeles Unified School Dist.* (1995) 31 Cal.App.4th 471, 476 [outer limits of statutory provision not decided].)

We interpret the phrase "entirely repeal the ordinance" in section 9145 as synonymous with "wholly revoke the ordinance" and "rescind the ordinance in all its parts," and conclude this meaning limits the additional action a board of supervisors may take to implement the essential feature of the protested ordinance.[11] Specifically, we conclude the additional action taken by a board may not have the practical effect of implementing the essential feature of the protested ordinance. In other words, additional action by a board of supervisors violates section 9145 if it fails to return to the status quo ante on the essential feature of the protested ordinance.

---

[11]    The limitation we adopt does not address how a county board of supervisors may proceed when the protested ordinance has *multiple* features that may be regarded as "essential."

22

Adopting a more lenient test would allow boards of supervisors to nullify or significantly burden the exercise of the referendum power by repealing a protested ordinance and immediately taking action that produces, from a practical perspective, essentially the same result. (*Martin v. Smith*, *supra*, 176 Cal.App.2d at pp. 118-119.) If the Elections Code provisions allowed the essential feature of the protested ordinance to be implemented by other means, the voters who protested the original ordinance would be forced to (1) invest more time, money and effort in circulating a new protest petition or (2) acquiesce in the board's legislative agenda. Even if they obtained enough valid voter signatures in time to protest the additional action, a board of supervisors could start the process again by repealing the additional action and adopting a slightly modified action that still achieved the essential feature of the protested ordinance. This cycle could continue until the most determined protestors were worn down, thereby effectively nullifying the referendum power of local voters. (*Martin v. Smith*, *supra*, at p. 118.)

Our interpretation of section 9145 is geared towards the *practical* effect of the board's additional action because substance, not form, is the proper test for determining the real character of conduct or a transaction. (*People v. Jackson, supra*, 24 Cal.App.2d at p. 192.) By addressing the practical effect, our interpretation is not limited to additional action that achieves a result *identical* to that of the protested ordinance. Such a narrow interpretation would allow the statute to be easily circumvented by additional action that achieves a slightly modified result. Similarly, our concern with substance also is the reason our test looks at the *essential feature* of the protested ordinance because that feature causes the substantive impact protested by the voters. Furthermore, we recognize that *Martin v. Smith*, *supra*, 176 Cal.App.2d 115, and prior cases mentioned good faith and an intent to evade the effect of the protest petition. (*Id*. at p. 119.) Our test need not concern itself with the state of mind of the members of the board of supervisors because their good or bad faith does not affect the practical, substantive impact of their actions on

23

the electorate. To summarize, we conclude section 9145's phrase "entirely repeal the ordinance" requires the board of supervisors to (1) revoke the protested ordinance in all its parts and (2) refrain from additional action that has the practical effect of implementing the essential feature of the protested ordinance.

### 5. County's Actions Were Essentially a Dispensary Ban

Whether County's board of supervisors entirely repealed the Dispensary Ban Ordinance for purposes of section 9145 depends on the practical impact of the Repeal Ordinance, which stated that "Chapter 5.84 of Title 5 of the Kern County Ordinance Code is hereby repealed in its entirety." In County's view, this "repeal of Chapter 5.84 in its entirety included the Dispensary Ban Ordinance and the version of Chapter 5.84 that was in effect before the Dispensary Ban Ordinance was adopted,"—that is, the 2009 Ordinance. Thus, County asserts the board did two things—it repealed the protested ordinance as required by section 9145 and it took the additional action of repealing the 2009 Ordinance. County argues that its second action was legal because "a board of supervisors may amend or repeal a code provision that was in effect before the protested ordinance was adopted." County supports this argument by citing *Duran v. Cassidy* (1972) 28 Cal.App.3d 574 for the principle that a local government's "power to legislate, by implication, includes the power to amend or repeal existing legislation." (*Id*. at p. 582.)

A preliminary question to our inquiry into the practical effect of the board of supervisor's action in repealing chapter 5.84 relates to the scope of the matters that may be assessed in analyzing the effect or impact of the board's additional action. We conclude that the proper scope of the inquiry is the totality of the circumstances of a particular case. It would be difficult to conduct a realistic assessment of the practical effect of a board's additional action without considering all of the surrounding circumstances. Also, the parties have not identified and we have not discerned any

24

category of information that can or should be ignored when assessing the practical impact of the additional action. Therefore, our review considers all of the circumstances relevant to the impact of the additional act of repealing the 2009 Ordinance.

One of the circumstances relevant to the impact is County's failure to comply with CEQA and the resulting invalidation of Measure G. The practical impact of the invalidation of Measure G and upholding the board's repeal of Chapter 5.84 in its entirety would be the absence of any ordinance authorizing dispensaries within County's jurisdiction. This impact is undisputed and is the basis for County's argument that defendants' dispensary is an unauthorized use. Therefore, whether the board's additional action of repealing the 2009 Ordinance complies with section 9145 depends on whether the absence of an ordinance authorizing medical marijuana dispensaries within County's jurisdiction has the practical effect of implementing the essential feature of the protested Dispensary Ban Ordinance.

Our request for supplemental briefing asked the parties whether County's attempt to repeal the 2009 Ordinance and its acts and omissions relating to Measure G was the substantive equivalent of a dispensary ban. Defendants answered, "Yes, the County's acts and omissions amounted to an ipso facto dispensary ban." County disagreed, arguing "the fact that the operation of a medical marijuana dispensary is not a permitted use is not the substantive equivalent of a dispensary ban."

County argues the absence of authorization resulting from the repeal of the 2009 Ordinance is not the same as a dispensary ban even though the Ordinance Code is a "permissive" code under which any uses not specifically permitted are prohibited. (Ordinance Code, § 19.02.060(C); see *City of Corona v. Naulls*, *supra*, 166 Cal.App.4th at p. 433.) County argues that there are at least two avenues for obtaining permission to operate a medical marijuana dispensary and these avenues preclude equating the absence of authorization with a dispensary ban. The first avenue for persons wishing to operate a

25

dispensary within County's jurisdiction is applying for a determination of "similar use" in accordance with procedures set out in sections 19.08.040 through 19.08.080 of the Ordinance Code. At oral argument, County suggested that a similar use application could be submitted on the ground that a medical marijuana dispensary is similar to a pharmacy. The second avenue is filing an application for a conditional use permit under section 19.08.085 of the Ordinance Code.

We conclude that the prohibition of medical marijuana dispensaries resulting from the repeal of the 2009 Ordinance would have the practical effect of implementing the essential feature of the protested ordinance—namely, a ban on dispensaries. Simply put, a prohibition is essentially the same as a ban. The theoretical possibility that County might authorize dispensaries under its discretionary authority does not alter our conclusion. The prohibition need not be *absolute* to have the practical impact of banning dispensaries. The avenues around the prohibition are too tenuous and have yet to be successfully traveled. Moreover, the fact that County is pursuing this litigation demonstrates County's current policy choice towards dispensaries. Thus, neither of the suggested avenues has been demonstrated to be a realistic way to overcome the prohibition on dispensaries. Restated in terms of the "essential feature" part of the test, we conclude the prohibition would achieve the essential feature of the Dispensary Ban Ordinance by (1) establishing a general rule that dispensaries were unauthorized and (2) giving County control over whether any dispensary would be treated as an exception to that general rule.

We recognize that, ordinarily, the board of supervisors would have the authority to repeal its earlier legislative acts such as the 2009 Ordinance. (See *Duran v. Cassidy*, *supra*, 28 Cal.App.3d at p. 582.) Under the unusual facts of this case, however, the board of supervisors' general authority to legislate is limited by the protections section 9145 affords the referendum process. The board of supervisors went beyond simply repealing

26

the Dispensary Ban Ordinance and their additional action, if upheld, would achieve a result nearly identical to the impact of the Dispensary Ban Ordinance—an impact that County voters sought to avoid by submitting a petition protesting the adoption of the Dispensary Ban Ordinance. Allowing County to achieve the practical equivalent of a dispensary ban by alternate means would render section 9145's protections of the referendum power so ineffectual that the referendum process would no longer "guarantee[] to the citizens an ultimate check on legislative power." (*Midway Orchards, supra,* 220 Cal.App.3d at p. 779.)

In sum, we conclude the actions of County's board of supervisors did more than entirely repeal the Dispensary Ban Ordinance as required by section 9145 because those actions, if allowed to stand, would have the practical impact of prohibiting medical marijuana dispensaries.[12]

### 6. Remedy for the Statutory Violation

The proper remedy for this statutory violation and the related impingement of the powers reserved to County's voters is to place the parties in the position that they would have occupied if County had "entirely repeal[ed] the ordinance against which [the protest] petition [wa]s filed." (§ 9145.) An entire repeal of the Dispensary Ban Ordinance would have allowed the provisions of the 2009 Ordinance that were codified in chapter 5.84 of the Ordinance Code to remain in effect. Therefore, we deem the repeal

---

[12] An alternate route for reaching this conclusion involves a comparison of the text of the Dispensary Ban Ordinance with the text of the Repeal Ordinance. A section of the Dispensary Ban Ordinance stated that "Chapter 5.84 of Title 5 of the Ordinance Code of the County of Kern is hereby amended in its entirety to read as follows." If the Repeal Ordinance had revoked this and all other parts of the Dispensary Ban Ordinance as required by section 9145, then chapter 5.84 would have continued as it was. Instead, the Repeal Ordinance stated that "Chapter 5.84 of Title 5 of the Kern County Ordinance Code is hereby repealed in its entirety." This repeal of chapter 5.84 in its entirety had the effect of resurrecting the part of the Dispensary Ban Ordinance that also got rid of chapter 5.84 in its entirety.

of the 2009 Ordinance to be invalid and treat that ordinance as being in full force and effect. It follows that there is no possibility County will succeed on the merits of its claim that defendants' operation of a medical marijuana dispensary is an unauthorized use of real property. The dispensary is authorized by the 2009 Ordinance, which treats it as a pharmacy for zoning purposes.

Consequently, we conclude as a matter of law that County cannot demonstrate the first factor of the test for granting a preliminary injunction. When an order grants a preliminary injunction, the absence of one of the two factors is sufficient grounds for reversing the order. (*Smith*, *supra*, 182 Cal.App.4th at p. 749; see *Aiuto v. City & County of San Francisco*, *supra*, 201 Cal.App.4th at p. 1355 [a preliminary injunction granted without a showing of a likelihood of success on the merits must be reversed].) Accordingly, the order granting County's motion for a preliminary injunction must be reversed.

C.    Failure to Raise Below

County argues that defendants did not raise the argument regarding the 2009 Ordinance in their opposition to County's motion for a preliminary injunction and, therefore, the argument is improper and should be disregarded by this court. Assuming for purposes of discussion that the issue was not raised in the trial court in connection with defendants' demurrer, this court has the discretion to consider a theory presented for the first time on appeal when that theory involves only a legal question determinable from the uncontroverted facts and those facts could not have been altered by the presentation of additional evidence. (*Redevelopment Agency v. City of Berkeley* (1978) 80 Cal.App.3d 158, 167; see *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 24 [appellate court may consider an issue of law based on undisputed fact when raised for the first time on appeal]; Gov. Code, § 68081.) We choose to exercise this discretion here because the power of referendum is guaranteed by the California Constitution and,

28

thus, clearly a matter of public interest. Furthermore, rights derived from that power were exercised by over 100,000 voters and over 69 percent of those voters expressed a desire for a substantive result different from the one County seeks to obtain by requesting this court to disregard a legal argument.

In short, without commenting on the merits of the various policy choices presented to voters and local governments faced with the realities of medical marijuana dispensaries and whether to ban or regulate them, the public interest in the referendum process itself is sufficient to dissuade us from turning a blind eye to County's violation of the Elections Code.

**DISPOSITION**

The order granting the preliminary injunction is reversed. Defendants Monassar and Satterfield shall recover their costs on appeal.

_____

FRANSON, J.

WE CONCUR:


_____

KANE, ACTING P.J.


_____

SMITH, J.