Filed 4/23/25  Parker v. Ainsworth CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| TIFFANY ANN PARKER,<br><br>　　Appellant,<br><br>　　　v.<br><br>ROBERT HOWARD AINSWORTH,<br><br>　　Respondent;<br><br>KERN COUNTY DEPARTMENT OF CHILD SUPPORT SERVICES,<br><br>　　Intervener and Respondent. | F086739<br><br>(Super. Ct. No. BFL-18-003913)<br><br>**OPINION** |

-ooOoo-

APPEAL from orders of the Superior Court of Kern County.  Cynthia L. Loo, Judge.

Tiffany A. Parker, in pro. per., for Appellant.

Robert H. Ainsworth, in pro. per., for Respondent.

No appearance for Intervener and Respondent.

-ooOoo-

This appeal involves a dispute by a mother and father over child support payments. The family court filed an order modifying father's child support payment from $1,662.40 to $553.00 per month in December 2021. In June 2023, mother filed both a request for order and a motion directed at setting aside the order modifying support. The family court denied both the request and the motion, concluding they were untimely. The mother appealed. We conclude she has not demonstrated reversible error.

The Family Code[1] section 17432 motion to cancel (set aside) support order based on presumed income was not filed within the one-year period established by section 17432, subdivision (f). That period begins to run when the first collection under the modified support order occurred. The record shows such a collection occurred in April 2022, more than 14 months before the June 2023 motion was filed. Thus, the family court correctly determined the section 17432 motion was untimely.

The mother's request for order setting aside the order modifying support alleged fraud and perjury. Her reliance of sections 2120, 2121 and 2122 is misplaced because they address relief from *judgments* and the order modifying support is not a judgment. As an order, it is subject to section 3691 and the six-month limitation period that begins to run after the moving party discovered, or should have discovered, the alleged fraud or perjury. (§ 3691, subds. (a), (b).) We conclude the delayed discovery provisions in section 3691 do not extend the six-month filing period because the record before this court does not establish any oral or written perjury or any fraud affected the December 2021 order modifying child support. Rather, the available evidence supports the family court's implied findings that no perjury or fraud occurred.

We therefore affirm the orders.

---

[1] Undesignated statutory references are to the Family Code.

2.

# FACTS AND PROCEEDINGS

Respondent Robert Ainsworth (Father) was born in the State of Washington, entered active duty with the Navy in February 2001, and retired 20 years and one month later.  He currently lives in Key West, Florida.

Appellant Tiffany Parker was born in Bakersfield, moved to Hawaii in 2013, and met Father in 2016 while he was serving in the Navy.  In June 2017, their son was born in Honolulu.  Legal proceedings addressing child support and custody have been filed in Hawaii, California and Florida.

In January 2018, a Hawaii family court approved the parties' stipulation addressing custody, visitation, child support, and paternity.  The stipulation gave Mother legal and physical custody of their son, provided Father with reasonable visitation as agreed by the parties, required Father to provide health insurance coverage, set child support at $1,662.40 per month, and required Father to mail all payments to the Child Support Enforcement Agency (Hawaii CSEA) at a post office box in Honolulu.

On August 30, 2018, Mother initiated Kern County Superior Court case No. BFL-18-003913 by filing a Judicial Council form FL-580 (Registration of Out-of-State Custody Order) that attached the stipulated custody and support order from the Hawaii proceeding.  Mother filed the form as a self-represented litigant and listed a Bakersfield address.[2]

---

[2]    To explain why the support order from Hawaii was filed with a court in California, Mother's opening brief asserts, at that time, she "continued primarily residing in Hawaii" and Father was residing at his duty station in San Diego and the order "was placed with the Kern County Superior Court in the event of visitation issues due to poor communications between the parties."

Earlier, in a June 2022 document, Mother stated she gave a copy of the custody order to the Kern County Superior Court because her brother was her next of kin, he was a resident there, and if she passed away there would be documentation for him to gain custody.  She also stated Hawaii CSEA continued to enforce the support order, she and

In January 2019, Mother received a letter from the Social Security Administration stating that Hawaii would pay her Medicare premium beginning December 2018, her monthly Social Security benefit would be $1,261 per month starting January 2019, and in January 2020, the amount would increase to $1,282.

In October 2019, Mother filed a motion to modify child support with the Hawaii family court. Mother asserted Father had rental income from properties located in Washington and Florida along with pay raises that were not reflected in the stipulated support order. Mother attended and represented herself at the July 15, 2020 hearing on the motion. Father was represented by counsel and was not personally present. The Hawaii family court denied the motion, stating the child support calculation had not increased by 10 percent from the last ordered support, which had been in effect for less than three years.

The following six paragraphs contain Kern DCSS's description of its involvement with Mother, Father and the Kern County family court matter initiated in August 2018 by Mother's registration of the Hawaii custody and support order.

On July 27, 2020 (12 days after the family court in Hawaii denied Mother's modification request), Mother submitted an application for services through Kern DCSS using an address in Bakersfield that requested it to enforce and modify the Hawaii order. On August 25, 2020, Mother sent Kern DCSS an income and expense declaration with a Bakersfield address signed and dated by her. On September 8, 2020, a child support specialist phoned Mother to conduct a case opening interview and left a voice message asking Mother to return the call. The record contains billing records listing a Lake Isabella address for Mother and showing the child received vaccinations at Kern Valley Hospital in November 2020.

---

her son remained residents of Hawaii, and she did not give a copy of the order to the Kern County Department of Child Support Services (Kern DCSS) to the Hawaii CSEA.

4.

On December 28, 2020, Mother applied for public benefits through Kern County reporting an address in Lake Isabella.[3] During the application process, Mother provided a copy of a lease for the Lake Isabella address for the period of September 2020 to September 2021. Kern DCSS confirmed Mother received benefits between December 2020 and December 2021 and, specifically, that Mother used the benefits in transactions occurring in Kern County every month from May 2021 to December 2021.

On June 15, 2021 (during the period benefits were used), a Kern DCSS review showed it had not completed a case opening interview. As a result, one of its child support specialists sent Mother an e-mail asking her to contact the specialist and provide information about the support order from Hawaii. Mother sent a reply e-mail stating: "I do not have a case with Kern County. Thank you." The next day, the specialist sent an e-mail stating: "There is an open case, but I will close it."

In July 2021, Kern DCSS mailed both parties a notice of intent to close its case that gave September 5, 2021, as the proposed closure date. On August 30, 2021, Father submitted an online application to Kern DCSS requesting it to open a case. The next day, Kern DCSS reopened its case and sent Mother an e-mail informing her of the service request and that a child support specialist would call her to conduct a case opening interview.

On September 2, 2021, Father spoke with Kern DCSS and asked for a modification of support based on changes in income and custody. Kern DCSS initiated a "Review and Adjustment" and requested financial information from the parties. The review and adjustment packet was mailed to Mother at the Lake Isabella address.

---

[3] Meanwhile, Father retired from the Navy in early 2021 and became a permanent resident of Florida. The record contains a Florida driver's license issued to Father in August 2021 that lists an address on Shore Avenue in Key West, Florida.

## *Kern DCSS's Motion to Modify*

On September 16, 2021, Kern DCSS filed a notice of motion (1) to intervene in Kern County Superior Court case No. BFL-18-003913 and (2) to modify the child support order made by the Hawaii family court. The motion was the first filing in the court case since 2018, when Mother registered the order and had her court fee waiver approved.

In the motion, Kern DCSS sought to change the January 2018 order of the Hawaii family court directing Father to pay child support of $1,662.40 per month. As supporting facts, Kern DCSS stated: "Motion filed at request of [Father] who asserts there has been a change in custody with regard to the child in this case, as follows: the [son] is now residing with [Father]. Additionally, [Father] asserts his income decreased." Kern DCSS served Father with a notice to appear at the hearing scheduled for November 8, 2021, and requested he produce pay stubs for the last 12 months, income tax returns for the last two years, and a completed income and expense declaration on Judicial Council form FL-150. (Code Civ. Proc., § 1987.)

On November 3, 2021, Mother filed a response to Kern DCSS's motion stating she did not consent to the request to modify child support, Hawaii had jurisdiction over custody and child support, four years of support had been paid through Hawaii, and the court should dismiss the case. She asserted she did not request a hearing, Father had lied to Kern DCSS to escape paying the child support balance owed in Hawaii, she and her son were not residents of California, Father was a resident of Florida, and Father had never requested physical custody of his son. To support her claim that Hawaii had jurisdiction, Mother attached her Hawaii identification card issued in September 2019, a copy of her son's birth certificate, and several documents filed in the Hawaii family court proceeding, including the January 2018 stipulated order regarding custody and support. The response listed a post office box in Honolulu as Mother's address.

6.

*November 2021 Hearing*

On November 8, 2021, the hearing on Kern DCSS's motion was held. The minute order for the hearing stated (1) an attorney for Kern DCSS appeared, Father appeared remotely, and Mother was not present; (2) "[t]he court grants the motion for modification"; (3) a calculation results summary was attached, incorporated, "and made a part hereof"; (4) "Petitioner"—that is, Mother—"pays the sum of $553.00 per month for the support of minor child(ren)"; and (5) "[c]hild support payments shall commence 10/1/2021." The unsigned minute order included in the clerk's transcript did not include any attachment.

The record contains a letter from Kern DCSS to Mother describing telephone conversations between its staff and Mother that occurred after the hearing. The letter stated Mother called Kern DCSS on November 8, 2021, because she missed the hearing and stated no one called her; when asked if she had registered at least one day before the hearing, Mother stated she had not because she was unaware of the requirement. The letter also stated Mother called the next day and asked why the support order was modified without her being present at the hearing and why Kern DCSS believed Father about custody of their son; Kern DCSS informed Mother that Father stated during the hearing that he did not have custody and, as a result, the modified support order was based on zero percent visitation for Father. Mother also asked why imputed income was used for her when she received Social Security Disability Income and was told the Family Code provides for the use of imputed income when a participant's income is unknown. Mother asked what she would need to do to change the order and was informed she would need to file her own motion.

The letter also described a telephone call made by Mother on November 18, 2021, to ask about the payment status because she had not received payments. The letter stated Kern DCSS verified that it "did not have a valid mailing address for [Mother]."

7.

On December 15, 2021, the commissioner signed and filed the order after hearing on Judicial Council form FL-687 that had been prepared by Kern DCSS's counsel. Correcting the minute order, the order stated the respondent (i.e., Father) was the parent ordered to pay support and attached a "Guideline Calculation Results Summary" stating: "ROBERT AINSWORTH is required to pay TIFFANY A PARKER $553.00 in CURRENT SUPPORT." The attachment listed the "Average % Time with NCP" (i.e., Father) as zero. The order directed the payments be made to Mother beginning October 1, 2021.

In December 2021, Kern DCSS contacted Hawaii CSEA and determined both agencies were enforcing a child support order for the period beginning September 1, 2021. Kern DCSS also determined its involvement should end as both parties had moved out of California. Later that day, Kern DCSS attempted to contact Mother by telephone, was unable to leave a message, and mailed her a letter explaining it would be closing its case.

On January 31, 2022, Kern DCSS telephoned Mother and informed her that (1) it needed to review its case further to determine whether the funds on hold for support could be disbursed to Mother; (2) it was aware Hawaii CSEA was also collecting and distributing child support payments for the time Kern DCSS case had been open; and (3) it would be closing its case and allowing Hawaii CSEA to continue to provide enforcement.

On February 28, 2022, Mother obtained a Florida driver's license that listed an address in Key Largo, Florida. During that month, Hawaii CSEA mailed information about the account balance to her at a post office box in Key West, Florida. One report showed Hawaii CSEA received a payment of $1,093.42 in September 2021, the next payment was in the same amount and was received in December 2021, and Hawaii CSEA believed the obligation owed was about $5,600.

In February and March 2022, Mother telephoned Kern DCSS to ask the status of payment and each time was informed the agency was still reviewing the case to determine if the funds on hold could be disbursed to her. Kern DCSS contacted Hawaii CSEA to ask for a payment record to ensure against overpayment. Kern DCSS was informed Hawaii CSEA was enforcing the original Hawaii support order and that agency was unsure if the California order setting support at $553 per month was valid. Kern DCSS asserted its position that California has continuous exclusive jurisdiction to modify the Hawaii order because the parties no longer resided in Hawaii.

A few days later, a staff attorney for Hawaii CSEA telephoned Kern DCSS and said that Hawaii would not honor the California order. The agencies exchanged further information and Kern DCSS asked for a proposed calculation of arrears as if Hawaii had been enforcing the California modification order instead of the Hawaii order. Kern DCSS placed a hold on funds to keep the money from being disbursed until a court determined the arrears.

On March 28, 2022, Mother again telephoned Kern DCSS about the funds on hold and was informed the case was being reviewed by the agency's legal department. The next day, Kern DCSS informed Mother it would file a motion to determine jurisdiction. Mother again asked why a case was opened in Kern County when she was not a resident there and she was told she had registered the Hawaii order in Kern County in 2018 in the event Father had tried to violate the custody provisions during a visit made while he was stationed in San Diego. The agency also stated all it could do was wait for a decision on its motion to determine which state had jurisdiction.

*Kern DCSS's Motion*

In May 2022, about five months after it obtained the modification order, Kern DCSS filed a notice of motion requesting the family court to determine the validity of the California order, determine the arrearage balance, and set a reasonable payment schedule for the arrears. Addressing the dispute with Mother as to where she resided when the

9.

modification order was made, Kern DCSS's moving papers asserted that in March 2022, it "received additional confirmation that [Mother] did in fact reside at the Lake Isabella address in 2021." Addressing the amount of arrears, Kern DCSS prepared and attached two calculations containing Father's payment history and how those payments applied to the support obligation in the Hawaii order and the California order. The calculations showed that under the California order, Father had an overpayment of about $52. In comparison Father owed a balance of about $7,714 if the Hawaii order remained in effect.

On June 17, 2022, Mother filed a response (form FL-685) to Kern DCSS's motion. Mother acknowledged that in 2018 she had registered the Hawaii order in Kern County, had taken her son to visit Father in San Diego, but she and her son remained residents of Hawaii during the time they were travelling. Addressing the dispute about where she resided in 2021 when the Kern DCSS filed its motion to modify support, Mother attached a copy of (1) a residential rental agreement listing her and a man as the tenants of a three-bedroom condominium in Honolulu for a term running from December 2020 through the end of December 2021, and (2) letters dated 2021 from the State of Hawaii sent to her post office box in Honolulu.

*Hearing and Order*

On June 28, 2022, a hearing was held on Kern DCSS's motion to determine the validity of the order modifying support and to determine arrears. Mother and Father appeared remotely. An attorney for DCSS appeared. There was no court reporter at the hearing. The court found its order modifying support valid and enforceable and Father had an overpayment of $52. The order after hearing prepared by Kern DCSS's counsel was signed and filed by the commissioner on August 4, 2022.[4]

---

[4] On July 11, 2022, Kern DCSS closed its case. A November 28, 2022 letter from Kern DCSS to Mother at her Frostproof address stated: "Per review of the case

*Florida Proceedings*

On June 29, 2022, the day after the hearing on Kern DCSS's motion, Mother filed a petition to domesticate and enforce out-of-state custody decree in case No. 2022DR-005397 before the court in Polk County, Florida. On June 30, 2022, Mother filed a petition for protection against domestic violence against Father; that proceeding was assigned case No. 22-DR-005445. In July 2022, in the first Florida case, Mother filed a supplemental petition to modify parental responsibility regarding visitation, timesharing, or a parenting plan.

On August 1, 2022, in the first Florida case, Father filed a petition to establish parental responsibility, timesharing, child support, and other related relief. The petition alleged (1) Mother had dropped their son off at Father's residence on July 16, 2022, pounded on the door, and was speeding away when Father opened the door; (2) the child was presently residing with Father; (3) the previous day, Mother had not attended a hearing on her domestic violence petition; and (4) the child was unsafe in the unsupervised care of Mother.[5]

On October 6, 2022, a mediation involving Mother, Father, and his counsel was held. Mother and Father's counsel signed a mediated settlement agreement that stated the parties agreed "to reserve on child support for final determination by the Court," and agreed to Father having 165 overnights with the child. A parenting plan was attached. A Frostproof, Florida address was listed for Mother and a Key West, Florida address for

---

financials, it appears no child support payments were ever issued to you through our office."

[5]     On August 11, 2022, Mother taken into custody by the Polk County Sheriff's Office at her son's elementary school based on a warrant issued in Monroe County, Florida. The Monroe County case charged her with cyberstalking Father. When the Department of Children and Families telephoned Father, he stated he was not coming to pick up the child. In January 2023, an assistant state attorney filed a *nolle prosequi* in the Monroe County case stating admissible evidence did not allow for a conviction.

11.

Father. Father did not sign the settlement agreement or the parenting plan. A week later, the Florida court granted the motion to withdraw filed by Father's counsel.

On October 20, 2022, Father contacted the police and expressed his concern about having heard Mother was driving on a suspended license with their son in the car. On November 12, 2022, Father contacted the police with questions about a temporary injunction he had obtained against Mother but had yet to be served. The temporary injunction was served later that day. On November 14, 2022, Father called the police with questions about catching Mother driving with their son in the car while her license was suspended and said he had pictures of her driving. He was informed a police officer needed to see Mother driving before action could be taken.

At a January 11, 2023 status conference before the Florida court, Father withdrew his petition regarding timesharing, child support, and other relief. The court's order noted that Mother's petitions filed in June and July of 2022 remained pending and a final hearing would be scheduled on those petitions.

On March 15, 2023, Father appeared in Monroe County, Florida case No. 2022-DR-627-K. He had obtained a temporary injunction for protection against domestic violence in that case and requested the action be voluntarily dismissed. The court dismissed the case without prejudice.

*Father's Disability Benefits*

Kern DCSS's September 2021 motion to modify child support was based on Father having taxable income of $2,378 per month and Mother having earned income, based on California's minimum wage, of $2,253 per month. Father's figure reflected his retirement pay without disability benefits.

In September 2022, Father filed a family law financial affidavit in the Florida custody and support case stating his monthly retirement pay was $2,513 and his monthly disability benefit was $2,116.85. In February 2023, he updated this information by filing

12.

an affidavit stating his monthly retirement pay was $2,731 and his month disability benefit was $4,317.

These monthly figures were supported by a February 17, 2023 retiree account statement provided to Father indicating his retirement pay was $2,731 per month and by a March 2, 2023 letter from the Department of Veteran Affairs (VA) summarizing his benefits from the VA. The letter stated (1) the character of Father's service was honorable; he had a service-connected disability that caused him to be considered totally and permanently disabled; he was being paid monthly at the 100 percent rate because he was unemployable due to the disabilities; and the effective date of the last change in his current award was December 1, 2022. The letter also stated the effective date of Father's total and permanent disability was March 9, 2022, and his current monthly benefit was $4,317.79.

On May 24, 2023, Mother sent Father an e-mail asking "[w]hen was the first time you began receiving any sort of disability income?" Father responded: "I received my first disability payment at a low rate (I can't see it) on November 1st 2021. I didn't receive payment until later. [¶] I received retirement pay before that which was filed in the CA court." This exchange of e-mails figures prominently in Mother's claim that Father committed fraud and perjury in connection with the November 8, 2021 hearing in the Kern County proceeding.

*Mother's Motions for Relief*

On June 7, 2023, Mother filed a request for order (Judicial Council form FL-300) seeking to vacate the order modifying child support made at the November 8, 2021 hearing. Mother asserted Kern DCSS failed to discover both parties' real income, stating Farther was receiving disability benefits at the time and she had no earned wages, only Social Security Disability Insurance payments as income. Mother alleged Father committed perjury to obtain the modification hearing.

13.

On June 23, 2023, Mother filed a notice and motion to cancel (set aside) support order based on presumed income (Judicial Council form FL-640). Mother asserted her monthly disability income in 2021 was $1,298 and she had no other income, and she estimated Father's monthly income in 2021 at $6,416. Both the request for order and the motion listed a Frostproof, Florida address for Mother.

Father filed a responsive declaration to request for order (Judicial Council form FL-320) stating he did not consent to the order requested. The declaration stated Father was making a special appearance to challenge jurisdiction and asserted Florida had exclusive jurisdiction over child support because Mother and the child had been residing in Florida since February 2022 and he had been a permanent resident of Florida since January 2021. The declaration also included the case number of the Polk County, Florida case Mother initiated in June 2022 to enforce child support.

Kern DCSS also filed a responsive declaration to request for order (Judicial Council form FL-320) stating it did not consent to the order requested. It asserted the request and motion should be denied because of res judicata and the time to rehear or appeal the order made on November 8, 2021, had lapsed. Kern DCSS argued the validity of that order was the subject of it notice motion, which was heard on June 28, 2022, and attended by Mother, Father and Kern DCSS.

*Order and Appeal*

On July 20, 2023, the hearing on Mother's motions was held. The minute order for the hearing stated (1) an attorney for Kern DCSS was present and Father and Mother appeared by telephone; (2) no court reporter was present; and (3) the motions were denied with prejudice.

On July 31, 2023, the commissioner signed and filed an order after hearing (Judicial Council form FL-687) prepared by counsel for Kern DCSS. The order stated Mother's motions filed June 7, 2023, and June 23, 2023, were denied with prejudice and "[t]he court finds the requests to set aside were untimely under the applicable statutes."

14.

Mother filed a timely appeal on August 18, 2023, that listed an address in Frostproof, Florida.

Because there was no court reporter at the July 2023 hearing, Mother filed a proposed settled statement with the superior court. The family court determined corrections were required and ordered Mother to prepare, serve, and file a modified settled statement. On November 1, 2023, Kern DCSS filed a proposed settled statement summarizing the proceedings at the July 2023 hearing. In March 2024, Mother filed an amended settled statement, attachments and exhibits totaling 321 pages. Kern DCSS filed a response requesting changes and asserting the amended proposed settled statement did not comply with applicable rules. The family court again ordered corrections and directed Mother to comply with its earlier order.

In May 2024, the family court issued an order stating Mother did not file a second amended proposed settled statement and, therefore, the record of oral proceedings would be Kern DCSS's proposed settled statement filed November 1, 2023.

Mother's amended proposed settled statement included a copy of an order closing case filed in Polk County, Florida case No. 2022DR-005397 in March 2024. The order stated Father testified that Mother and the child had moved to California, the Florida court had no jurisdiction to order the California court to do anything, the action would be dismissed with prejudice, and the clerk of court was directed to close the matter.

## DISCUSSION

I.      BASIC PRINCIPLES OF APPELLATE REVIEW

In *Jameson v. Desta* (2018) 5 Cal.5th 594, the California Supreme Court stated "it is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment. [Citations.] 'This is not only a general principle of

15.

appellate practice but an ingredient of the constitutional doctrine of reversible error.' " (*Id*. at pp. 608–609; see Cal. Const., art. VI, § 13; Code Civ. Proc., § 475 ["There shall be no presumption that error is prejudicial"].)

Pursuant to the presumption of correctness, the reviewing court must indulge all intendments and presumptions that support the trial court's order. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Thus, when an order is silent on a particular question, the reviewing court presumes the trial court decided the matter in a way that supports the order. (*Ibid*.) When there are disputed issues of fact, the reviewing court interprets the trial court's decision to include implied findings of fact that are favorable to the order, provided such findings are supported by substantial evidence. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133; see *Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58.)

We apply the abuse of discretion standard of appellate review when considering a family court's ruling under section 2122 or 3691. (*In re Marriage of Rosevear* (1998) 65 Cal.App.4th 673, 682 [§ 2122]; *In re Marriage of Zimmerman* (2010) 183 Cal.App.4th 900, 906 [§ 3691] (*Zimmerman*).) "The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712, fns. omitted; see *In re Marriage of Hein* (2020) 52 Cal.App.5th 519, 529; *County of Kern v. T.C.E.F., Inc.* (2016) 246 Cal.App.4th 301, 316 [abuse of discretion standard does not allow trial courts to apply incorrect rule of law or make factual findings that are not supported by substantial evidence].)

II.    MOTION FOR RELIEF FROM SUPPORT BASED ON PRESUMED INCOME

Section 17432 authorizes relief from the part of a judgment or order concerning the amount of child support when that amount is based upon presumed income. (§ 17432, subds. (a), (b).)  The statute's timeliness provision states:  "A motion for relief under this section shall be filed within one year of the first collection of money by the local child support agency or the obligee.  The one-year time period shall run from the date that the local child support agency receives the first collection."  (§ 17432, subd. (f).)

Mother's section 17432 motion using Judicial Council form FL-640 was filed on June 23, 2023.  Consequently, if the local child support agency received the first collection of the modified support payment of $553 more than one year earlier (i.e., before June 23, 2022), Mother's motion would have been filed too late.

The clerk's transcript contains a month-to-month transaction summary showing a $553 support payment was received by Hawaii CSEA in April 2022.  The summary was attached as an exhibit to Kern DCSS's May 2022 motion to determine the validity of the November 8, 2021 order modifying support.  The summary constitutes substantial evidence supporting the family court's implied factual finding that the motion was not brought within one year of the date the first modified support payment was received.  Therefore, we conclude the family court did not commit factual err when it determined Mother's section 17432 motion to set aside support based on presumed income was untimely.

Next, we consider whether the family court committed legal error by misinterpreting the statute.  Mother's opening brief asserts that, in a letter dated November 28, 2022, Kern DCSS conceded no payment ever circulated through California.  This assertion implies that Hawaii CSEA is not "the local child support agency" for purposes of section 17432, subdivision (f) and, therefore, any collection received by it is irrelevant to application of the statute.  Stated another way, Mother implies that only Kern DCSS qualifies as the local child support agency.  Mother,

however, has not presented any argument or cited any legal authority to support this interpretation of the statute. Consequently, she has failed to affirmatively demonstrate the family court erred when it interpreted the statute more broadly. (See *Jameson v. Desta, supra,* 5 Cal.5th at p. 609 [appellant has the burden of demonstrating "the trial court committed an error that justifies reversal"].)

Moreover, we conclude interpreting the phrase "the local child support agency" (§ 17432, subd. (f)) to include Hawaii CSEA is consistent with the principle that courts must give statutes a reasonable and commonsense interpretation. (*In re Reeves* (2005) 35 Cal.4th 765, 771, fn. 9.) At a minimum, Mother had notice of Hawaii CSEA had received the modified amount of support by May 2022 when she was served with a copy of Kern DCSS's motion to determine the validity of the support modification order. After service of Kern DCSS's motion, Mother waited approximately 13 months before filing her section 17432 motion. Interpreting the statute to exclude the agency of another state receiving the modified payment when the moving party is aware of that collection activity would mean the filing period is open ended in those circumstances and allow the moving party to unreasonably delay seeking relief. (See § 17432, subd. (f).) Therefore, we conclude the family court did not misinterpret section 17432 when it implied determined Hawaii CSEA qualified as the "the local child support agency" (§ 17432, subd. (f)) and, as a result, Mother's motion to set aside support based on presumed income was untimely.

## III. REQUEST TO SET ASIDE MODIFICATION OF SUPPORT ORDER

Mother also contends the family court erred when it denied as untimely her June 7, 2023 request for order to set aside or vacate the family court's order modifying child support. The modification order was made orally at the November 8, 2021 hearing, included in the minute order for the hearing, and formalized in the Judicial Council form FL-687 filed on December 15, 2021.

18.

A.      Code of Civil Procedure Section 473

On appeal, Mother cites sections 2120, 2122, and 3691 and does not argue she is entitled to relief under the discretionary provision in Code of Civil Procedure section 473, subdivision (b).  Nonetheless, because her moving papers, section 2121, subdivision (a), and section 3690, subdivision (a) refer to Code of Civil Procedure section 473, we briefly explain why relief is not available under Code of Civil Procedure section 473, subdivision (b) to provide context for our discussion of the Family Code provisions for relief.

Code of Civil Procedure section 473, subdivision (b) provides that a "court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect."  (See *Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 257 [statute grants discretionary authority to the trial court].)  To obtain relief, the application must "be made within a reasonable time, in no case exceeding six months, after the … order … was taken." (§ 473, subd. (b).)

Here, Mother's June 7, 2023 request to set aside the modification order was filed more than one year and five months after the order was filed on December 15, 2021. Consequently, the request was made outside the statute's six-month period when Mother was no longer eligible for relief under Code of Civil Procedure section 473, subdivision (b).

B.      Sections 2121 and 2122 and Relief from a Judgment

Mother's opening brief quotes the legislative findings and declarations in section 2120 and along with parts of section 2122.

In section 2120, subdivision (a), the Legislature declared that "California has a strong policy … of providing for fair and sufficient child … support awards" and that policy goal could only be implemented through full disclosure of financial information in

19.

accordance with sections 2100 through 2113. The Legislature also found and declared that "[i]t occasionally happens that … the award of support, whether made as a result of agreement or trial, is inequitable when made due to the nondisclosure or other misconduct of one of the parties." (§ 2120, subd. (b).)

Relief from certain support awards is authorized by section 2121, subdivision (a), which provides in full:

> "In proceedings for dissolution of marriage, for nullity of marriage, or for legal separation of the parties, the court may, on any terms that may be just, relieve a spouse from a *judgment*, or any part or parts thereof, adjudicating support or division of property, after the six-month time limit of Section 473 of the Code of Civil Procedure has run, based on the grounds, and within the time limits, provided in this chapter." (Italics added.)

Section 2122 sets forth "[t]he grounds and time limits for a motion to set aside a *judgment*, or any part or parts thereof." (Italics added.) The grounds include actual fraud, perjury, duress, mental incapacity, and a failure to comply with statutory disclosure requirements. (§ 2122, subds. (a), (b), (c), (d), (f).) The limitations period for motions based on actual fraud or perjury are "one year after the date on which the complaining party either did discover, or should have discovered," the fraud or perjury. (§ 2122, subd. (a), (b).)

The first issue we consider involves the phrase "a judgment, or any parts thereof" that appears in both section 2121, subdivision (a) and section 2122 and how that phrase applies to the facts of this case. Specifically, we consider whether Mother is seeking relief from or "judgment" or any part of a judgment.

This question was addressed in *Zimmerman, supra,* 183 Cal.App.4th 900, when the petitioner argued that the one-year limitations period in section 2122 applied to her request to set aside child support orders allegedly obtained by fraud. (*Id*. at p. 905.) The appellate court rejected the argument because section 2122 applies to a motion to set aside a *judgment* and the petitioner's motion sought to set aside a support *order*. As a

20.

result, the court concluded the motion was governed by section 3691, subdivision (b) and its six-month limitations period. (*Zimmerman*, *supra,* at p. 910.)

Based on *Zimmerman* and the plain meaning of the word "judgment" used in sections 2121 and 2122, we conclude Mother's request for relief from the *order* modifying child support is not governed by sections 2121 and 2122 and the one-year limitations period. Instead, the timeliness of the request must be determined under section 3691 and its shorter limitations period. (*Zimmerman*, *supra*, 183 Cal.App.4th at p. 910.)

C.      Relief from a Support Order under Section 3691

1.      *Relevant Statutory Text*

In the Child Support Enforcement Fairness Act of 2000, the Legislature declared, "[t]he efficient and fair enforcement of child support orders is essential to ensuring compliance with those orders and respect for the administration of justice." (Stats. 1999, ch. 653, §§ 1, subds. (a), (b)(1).) Among other things, the act addressed relief from certain support orders by adding sections 3690 through 3693 to the Family Code. (Stats. 1999, ch. 653, § 6.)

Section 3690, subdivision (a) provides that the family "court may, on any terms that may be just, relieve a party from a support order, or any part or parts thereof, after the six-month time limit of Section 473 of the Code of Civil Procedure has run, based on the grounds, and within the time limits, provided in this article." Section 3691 provides in part:

> "The grounds and time limits for an action or motion to set aside a support order, or part thereof, are governed by this section and shall be one of the following:

> "(a) Actual fraud. Where the defrauded party was kept in ignorance or in some other manner, other than through the party's own lack of care or attention, was fraudulently prevented from fully participating in the proceeding. An action or motion based on fraud shall be brought within six

21.

months after the date on which the complaining party discovered or reasonably should have discovered the fraud.

"(b) Perjury. An action or motion based on perjury shall be brought within six months after the date on which the complaining party discovered or reasonably should have discovered the perjury."

Subdivision (c) of section 3691 addresses a lack of notice that results in a default or default judgment and, thus, is not applicable to the modification order challenged in this appeal. Mother bases her claim for relief under section 3691 on both fraud and perjury.

### 2. *Perjury Has Not Been Established*

California's definition of perjury provides that "every person who testifies, declares, deposes, or certifies under penalty of perjury in any of the cases in which the testimony, declarations, depositions, or certification is permitted by law of the State of California under penalty of perjury and willfully states as true any material matter which he or she knows to be false, is guilty of perjury." (Pen. Code, § 118, subd. (a).) Penal Code section 124 states: "The making of a ... certificate is deemed to be complete ... from the time when it is delivered by the accused to any other person, with the intent that it be uttered or published as true."

Our analysis of Mother's perjury claim is divided into two parts. The first addresses perjured testimony—that is, a false oral statement given under oath. The second addresses false written statements given in a declaration or certificate.

Mother has not established perjured testimony was presented at the November 8, 2021 hearing. The minute order from the hearing does not state any person was sworn or testified. No court reporter was present at the hearing and, as a result, there is no reporter's transcript showing any testimony was given at the hearing. Also, there is no agreed statement or settled statement of the oral proceedings that occurred at the hearing. (See Cal. Rules of Court, rule 8.134 [agreed statement], 8.137 [settled statement].) Because the appellate record does not contain any testimony presented at the hearing, it is

22.

not possible for this court to conclude any testimony was tainted by perjury. In short, Mother has not carried her burden as the appellant of affirmatively demonstrating perjured testimony was a basis for the family court's order modifying support. (See *Jameson v. Desta*, *supra*, 5 Cal.5th at p. 609 [appellant's burden].)

In addition, Mother has not established that a declaration or certificate affecting the modification order contained a false statement that qualifies as perjury. Mother's opening brief refers to "Father's application for services and income/address information provided [to Kern DCSS] under perjury in 2021 which prompted" Kern DCSS to move for modification of child support. She contends an attorney for Kern DCSS "admitted to obstruction of justice by the agency destroying" that application and information. She supports this contention by referring to the position statement served by Kern DCSS on January 17, 2024, which stated:

> "On August 31, 2021, KCDCSS reopened the case at the request of [Father]. The [Mother] was notified by phone call of the case reopening. KCDCSS's staff member was having difficulty in uploading [Father's] application for services into CSE and it was inadvertently not saved. However, the information was set forth in a contemporaneous business note entry (ALE) in the KCDCSS case management system (CSE)."

The position statement asserted Father's application listed Mother's Lake Isabella address, not the Bakersfield post office box she had provided Kern DCSS, and listed a Key West address for himself.

Without a document signed by Father under penalty of perjury, we cannot determine whether Father made a false statement of fact that was both material to the proceedings and was known by him to be false. Furthermore, assuming the position statement accurately described the information Father gave Kern DCSS about his address and Mother's address, the record supports Father having a Key West address at that time. Father's July 2023 declaration states he has been a permanent resident of Florida since January 2021. Also, the record contains a photocopy of a Florida driver's license issued

to Father in August 2021, which lists an address in Key West. Thus, it appears Father gave Kern DCSS accurate information about his address. As to Mother's address at that time, the record contains conflicting information, which prevents us from concluding the Lake Isabella address was wrong and, moreover, was known by Father to be an incorrect address. Similarly, on the issues of custody and income, without a document signed by Father, it is not possible to conclude he committed perjury on those matters in a declaration or certificate.

To summarize, Mother has not shown the order modifying support should have been set aside due to perjured testimony or a perjured declaration. (§ 3691, subd. (b).)

### 3. Actual Fraud

Mother's theory of fraud and the timeliness of her request for relief under section 3691 asserts Kern DCSS and Father were in sole possession of information about his VA disability award and the dates of payment; Father did not disclose proof of the VA disability award until March 2023; and in a May 24, 2023 e-mail, Father admitted he received his first disability payment on November 1, 2021, which was before the modification hearing on November 8, 2021. Mother claims these facts establish Father engaged in fraud to obtain the order modifying support.

According to the settled statement approved by the family court, at the July 20, 2023 hearing, Father denied he had engaged in fraud and stated he had provided all his income information to Kern DCSS before the November 8, 2022 hearing. Father's respondent's brief asserts the dates given in his e-mail were estimates; he provided Mother with a copy of a November 15, 2021 letter from the VA indicating he was eligible for back pay; and the VA then paid him for his months of eligibility that preceded the letter. In sum, Father contends his initial disability benefit from the VA was paid retroactively after the November 8, 2022 hearing.

24.

The parties' arguments required the family court to interpret the e-mails exchanged on May 24, 2023. Father's e-mail stated in part:

> "I received my first disability payment at a low rate (I can't see it) on November 1st, 2021. I didn't receive payment until later. [¶] I received retirement pay before that[,] which was filed with the CA court."

The first two sentence of Father's e-mail are ambiguous about the date he "received" payment of his first disability payment. The first says the payment was received on November 1, 2021. The second says the payment was not received until later. As a result, the family court had to resolve this contradiction. Based on the presumption of correctness and the related doctrine of implied findings, we must conclude the court found the first disability payment was attributed to an earlier period and that payment was made retroactively. In other words, the court found Father did not gain possession of the first payment of a disability benefit until after the November 8, 2021 hearing.

Because the evidence in the appellate record does not compel a finding that Father actually received disability benefits before the November 8, 2021 hearing, we are required by the rules of appellate procedure to accept the family court's implied interpretation of the ambiguous email. (See *Denham v. Superior Court*, *supra*, 2 Cal.3d at p. 564; *Fladeboe v. American Isuzu Motors Inc.*, *supra*, 150 Cal.App.4th at p. 58.) As a result, Mother has not demonstrated Father committed fraud that would delay in the start of the six-month period specified in section 3691, subdivision (a). It follows that the family court correctly determined Mother's June 2023 request for relief from the December 2021 order modifying support was untimely.

## DISPOSITION

The orders denying appellant's request for order and her section 17432 motion are affirmed. Respondent shall recover his costs on appeal.

FRANSON, J.

WE CONCUR:

LEVY, Acting P. J.

SNAUFFER, J.