Filed 10/7/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

<table>
<tr><td>

MOVE EDEN HOUSING et al.,

    Plaintiffs and Respondents,

v.

CITY OF LIVERMORE et al.,

    Defendants and Appellants;

EDEN HOUSING, INC.,

    Real Party in Interest and
Appellant.

</td><td>

A171937

(Alameda County
Super. Ct. No. 22CV015399)

</td></tr>
</table>

In *Move Eden Housing v. City of Livermore* (2024) 100 Cal.App.5th 263 (*Move Eden I*), this court directed the trial court to issue a peremptory writ of mandate ordering appellants the City of Livermore (City) and Livermore City Clerk Marie Weber (City Clerk) to process a referendum petition submitted by respondents Move Eden Housing et al. (Move Eden). The proposed referendum challenged a 2022 city council resolution (the 2022 Resolution) approving a development agreement between the City and real party in interest Eden Housing, Inc. (Eden Housing) for development of affordable workforce housing in downtown Livermore. Among other things, this court held that, although the 2022 Resolution largely involved administrative acts not subject to the referendum power, adoption of the resolution was a legislative act because, for the first time, it authorized the construction of and

1

improvements to a new public park, to be called Veterans Park.[1] (*Move Eden I*, at pp. 269, 275–278.)

Following the decision in *Move Eden I*, the City repealed the 2022 Resolution and enacted a new resolution (the 2024 Resolution) that approves the same agreement approved in the 2022 Resolution, *except* it omits the provisions related to the construction of Veterans Park that were central to this court's decision in *Move Eden I*. Move Eden moved for an order compelling the City to comply with the writ of mandate, arguing that adoption of the 2024 Resolution violated section 9241 of the Elections Code,[2] which provides that an ordinance not submitted to the voters must be "entirely repeal[ed]" and prohibits reenactment of a repealed ordinance "for a period of one year after the date of its repeal by the legislative body." The trial court granted the motion.

We reverse. Consistent with the scope of the referendum power, we conclude that section 9241 did not prohibit the City from adopting the 2024 Resolution, which involves only administrative acts implementing prior legislative determinations not challengeable by referendum.

BACKGROUND[3]

The present appeal involves a proposed residential development in downtown Livermore (the Project), at the location of a former supermarket, in an area bounded by Railroad Avenue, Livermore Avenue, First Street, and

---

[1] The 2022 Resolution referred to the park as Veteran's Park and the subsequent enactment at issue in the present appeal refers to Veterans Park; we use the more recent spelling herein.

[2] All undesignated section references are to the Elections Code.

[3] Aside from the post-remand developments, this background is drawn from this court's prior decision, *Move Eden I*, *supra*, 100 Cal.App.5th 263.

L Street (the Property). (See *Save Livermore Downtown v. City of Livermore* (2022) 87 Cal.App.5th 1116, 1122 (*Save Livermore Downtown*) [describing the Project in a proceeding challenging the City's compliance with environmental and zoning laws].)

In 2008, the City's former redevelopment agency acquired the Property using the City's inclusionary housing funds, and, in 2009, a portion of the purchase price was refinanced using "Residential Development Loan Program" funds from the State of California. The funds were awarded to the City for "site acquisition and pre-development expenses" in the City's downtown. The City loaned the funds to the former redevelopment agency, and a deed restriction was recorded requiring any development of the Property to include "at least" 28 units of "low-income" housing and 56 units of "moderate-income" housing.

In 2018, the City and Eden Housing entered into a Disposition and Development and Loan Agreement for development of the Property (2018 Agreement). The 2018 Agreement recited that, in January, the city council "approved the development of the Livermore Village Site[4] to include a public park, up to 130 units of workforce housing, a science center, a black box theater, and retail space." The City selected Eden Housing to develop housing at the Property, and the agreement states a portion of the Property "will be dedicated to the City for a park." The City agreed, after satisfaction of various conditions, to sell the Property to Eden Housing for the Property's fair market value at the time of sale and to make "a future acquisition loan to [Eden Housing] in the amount of the Purchase Price of the Property."

In December 2020, the City reviewed "Conceptual Plans" and "instructed staff to move forward" (capitalization omitted) with the Project.

---

[4] The Livermore Village Site is a larger area that includes the Property.

3

In May 2021, the City approved land use entitlements for the Project, subject to conditions. That same month, the City approved an amended development agreement (2021 Agreement). The approval resolution and the 2021 Agreement recited that the City and Eden Housing "wish to amend the [2018 Agreement] to clarify the definition of the Property subject to transfer by City for development of the Project, define development and financial obligations for [Veterans] Park" and other matters. With respect to the park, the 2021 Agreement stated, "[a]t City's option, City and Developer may negotiate a future construction and reimbursement agreement with Developer to coordinate the construction of the [Veterans] Park Improvements. These improvements would be exclusive of any development loan provided by the City for development of the Project."

In June 2021, a group known as Save Livermore Downtown filed a petition for a writ of mandate contending that the City violated the California Environmental Quality Act (Pub. Resources Code, § 21000 et seq.) and state and local planning and zoning laws in approving the Project. The trial court denied the petition and this court affirmed. (*Save Livermore Downtown*, *supra*, 87 Cal.App.5th 1116.)

On May 24, 2022, the City adopted the 2022 Resolution, Resolution No. 2022-085, which was the subject of *Move Eden I*. The 2022 Resolution authorized the execution of an "Amended and Restated Disposition, Development and Loan Agreement" for the Project (2022 Agreement). Among other provisions, the 2022 Agreement reflects the City's decision to spend $5.5 million on constructing and improving Veterans Park as part of the Project. In particular, the agreement provides, "The Parties agree that the Developer will manage the construction of the [Veterans] Park Improvements but that the City will pay for the costs of the [Veterans] Park Improvements

4

at its sole expense. City and Developer will negotiate a future construction management and reimbursement agreement to coordinate the construction of the [Veterans] Park Improvements. The Agreement shall authorize reimbursement for the construction of the park, per the designs and specifications issued by the City, and shall not exceed [$5.5 million] . . . without additional approval of the City Council."

On May 27, 2022, the City Clerk was provided a proposed summary of the 2022 Resolution for the purpose of a proposed referendum on the resolution. On June 3, Move Eden was formed to, among other things, promote the qualification of the proposed referendum. On July 8, the referendum proponents submitted a referendum petition to the City Clerk with more than the required number of signatures to qualify the referendum for the November 2022 ballot.

On July 13, 2022, the City Clerk stated in a letter that, "[b]ased on the advice from the City Attorney and special counsel, . . . the City has determined that Resolution No. 2022-085 was an administrative act, not a legislative act, and not subject to referendum."

In August 2022, Move Eden filed a petition for writ of mandate (Petition) seeking to compel the City and the City Clerk to process the referendum petition in accordance with the Elections Code.

In January 2023, the trial court denied the Petition on the merits. The court concluded the 2022 Resolution was not subject to challenge by referendum because it was an administrative act or, in the alternative, because the City acted as an administrative agent of the state in adopting it. The court concluded that either it was lawful for the City Clerk to refuse to process the referendum petition, or it is proper to " 'retroactively validate[]' " the conclusion that the proposed referendum is invalid, even if the City Clerk

5

violated the law. The trial court denied the Petition, and the appeal resulting in *Move Eden I* followed.

In *Move Eden I*, this court reversed, concluding that the City Clerk could not refuse to process the referendum based on advice from the City that the 2022 Resolution was an administrative act, and that the City did not act as an administrative agent of the state in adopting the resolution. (*Move Eden I, supra*, 100 Cal.App.5th at pp. 273–276, 278–284.) This court further held that adoption of the 2022 Resolution *was* a legislative act subject to challenge by referendum because "[t]he 2022 Agreement, for the first time, authorizes the construction of and improvements to [Veterans] Park." (*Id.* at p. 277.)[5] Finally, in an unpublished portion of the decision, this court held the City did not act legislatively in approving loan terms and an indemnity provision relating to hazardous waste in the 2022 Resolution. We remanded to the trial court with directions "to issue a peremptory writ of mandate ordering [the City Clerk and the City] to process the referendum petition as required by the Elections Code." (*Move Eden I*, at p. 286.)[6]

On remand, the trial court issued a writ of mandate compelling the City to process Move Eden's referendum petition "as required by the Elections Code." The City Clerk processed the referendum petition by delivering it to the Alameda County Registrar of Voters. After the referendum was certified, it was presented to the city council for a decision

---

[5] In its opening brief, the City presents information and arguments regarding the status of Veterans Park prior to adoption of the 2022 Resolution; those matters were not presented to this court in the *Move Eden I* appeal, and the City identifies no relevance to the issues in the present appeal. (See *Move Eden I, supra*, 100 Cal.App.5th at p. 277.)

[6] We also reversed the trial court's order requiring Move Eden to file an undertaking under Code of Civil Procedure section 529.2.

6

whether to repeal the 2022 Resolution or to place it on a ballot for voter approval. On June 24, 2024, the city council repealed the 2022 Resolution in Resolution No. 2024-108, reciting that the City "respects the Appellate Court's opinion that the approval of the construction of and improvements to Veterans Park is a legislative act, and the will of the voters to set aside that act, and hereby repeals" the 2022 Resolution. Separately but on the same day, the city council adopted the 2024 Resolution, Resolution No. 2024-109, which reaffirms the 2022 Agreement, except for all provisions pertaining to the construction of and improvements to Veterans Park. The 2024 Resolution states that the City "ratifies, reaffirms, and readopts the [City's] execution of the [2022 Agreement], except for the language for the construction of and improvement to Veterans [P]ark, and hereby acknowledges that the remaining language of the agreement remains in full force and effect as of the date the agreement was signed." The 2024 Resolution included, as exhibits, the 2022 Resolution with the original 2022 Agreement and a document indicating the provisions in the agreement relating to Veterans Park that have been "pulled from the agreement."[7]

Move Eden moved for an order compelling compliance with the writ of mandate, arguing adoption of the 2024 Resolution violated section 9241. The trial court granted the motion, finding that "the new 2024 resolution was substantially similar to the original one, with the exclusion of the Veterans Park provisions, and not 'essentially different,'" and concluding that the City violated section 9241 because the City "effectively repealed only part of the original resolution" and because "the new resolution cannot be enacted for a period of a year following the repeal."

---

[7] The City actually took all these steps to comply with the *Move Eden I* decision before the trial court issued its writ of mandate in July 2024.

The present appeal followed.

## DISCUSSION

I. *Standard of Review*

A traditional writ of mandate under Code of Civil Procedure section 1085 " 'is used to compel a public entity to perform a legal and usually ministerial duty.' " (*Schmid v. City & County of San Francisco* (2021) 60 Cal.App.5th 470, 484–485.) Generally, a reviewing court "may reverse a trial court's determination of whether there has been compliance with its writ only for abuse of discretion." (*Summit Media, LLC v. City of Los Angeles* (2015) 240 Cal.App.4th 171, 182.) But "[w]here questions of law are presented, the appellate court conducts an independent review and does not defer to the trial court's decision." (*San Bernardino County Fire Protection Dist. v. Page* (2024) 99 Cal.App.5th 791, 802.) "Statutory interpretation is 'an issue of law, which we review de novo.' " (*Union of Medical Marijuana Patients, Inc. v. City of San Diego* (2019) 7 Cal.5th 1171, 1183; see also *Robles v. Employment Development Dept.* (2015) 236 Cal.App.4th 530, 546.) "[T]he use of an incorrect legal standard necessarily constitutes an abuse of discretion." (*Cisneros v. Department of Motor Vehicles* (2024) 104 Cal.App.5th 381, 422.)

Because resolution of the issues on appeal requires interpretation of section 9241, our review is de novo. (*Lindelli v. Town of San Anselmo* (2003) 111 Cal.App.4th 1099, 1104 (*Lindelli*) ["The trial court's determination that [respondents'] actions did not violate the Elections Code is a legal finding subject to independent review"].) " 'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose.' [Citation.] The well-established rules for performing this task require us to begin by examining the statutory language, giving it a plain and commonsense meaning. [Citation.] We do

8

not, however, consider the statutory language in isolation; rather, we look to the statute's entire substance in order to determine its scope and purposes. [Citation.] That is, we construe the words in question in context, keeping in mind the statute's nature and obvious purposes. [Citation.] We must harmonize the statute's various parts by considering it in the context of the statutory framework as a whole. [Citation.] If the statutory language is unambiguous, then its plain meaning controls. If, however, the language supports more than one reasonable construction, then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history." (*Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1106– 1107.) A critical part of the framework for interpreting section 9241 is the " 'constitutional scheme.' " (*County of Kern v. Alta Sierra Holistic Exchange Service* (2020) 46 Cal.App.5th 82, 93–94, 101 (*County of Kern*) [construing section 9145, a related provision applicable to counties].)

II.     *The Referendum Power*

"Under the California Constitution, '[t]he legislative power of this State is vested in the California Legislature . . . but the people reserve to themselves the powers of initiative and referendum.' (Cal. Const., art. IV, § 1.) . . . The initiative power allows voters to propose new measures and place them on the ballot for a popular vote. If the measure is approved by popular vote, it becomes law. (Cal. Const., art. II, §§ 8, 10, subd. (a).) The referendum power, by contrast, allows voters to weigh in on laws that have already been passed by their elected representatives. Any voter or group of voters that gathers enough signatures can place a legislative enactment on the ballot for an up or down vote. A referendum suspends operation of the

9

law until it is approved by a majority of voters." (*Wilde v. City of Dunsmuir* (2020) 9 Cal.5th 1105, 1111 (*Wilde*).)

"Under . . . section 9237, if a petition protesting the adoption of an ordinance is signed by more than 10 percent of the voters of the city, 'the effective date of the ordinance shall be suspended and the legislative body shall reconsider the ordinance.' " (*Save Lafayette v. City of Lafayette* (2018) 20 Cal.App.5th 657, 663.) Section 9241 provides in relevant part, "If the legislative body does not entirely repeal the ordinance against which the petition is filed, the legislative body shall submit the ordinance to the voters . . . . The ordinance shall not become effective until a majority of the voters voting on the ordinance vote in favor of it. If the legislative body repeals the ordinance or submits the ordinance to the voters, and a majority of the voters voting on the ordinance do not vote in favor of it, the ordinance shall not again be enacted by the legislative body for a period of one year after the date of its repeal by the legislative body or disapproval by the voters."[8]

"The Constitution 'speaks of the initiative and referendum, not as a right granted the people, but as a power reserved by them.' [Citation.] Since then, courts have consistently declared it their duty to ' "jealously guard" ' and liberally construe the right so that it ' "be not improperly annulled." ' [Citations.] Moreover, when weighing the tradeoffs associated with the initiative [or referendum] power, we have acknowledged the obligation to

---

[8] Section 9241 was enacted as part of a recodification of the Elections Code that involved no substantive changes. (Stats. 1994, ch. 920, § 2.) The "entirely repeal" language now in section 9241 was first enacted in 1911 (Stats. 1911, ch. 33), following amendment of the California Constitution to provide for the initiative and referendum powers. (See *Associated Home Builders etc., Inc. v. City of Livermore* (1976) 18 Cal.3d 582, 591 (*Associated Home Builders*).) The "shall not again be enacted" language now in section 9241 (the stay provision) was enacted in 1949. (Stats. 1949, ch. 194, § 1.)

10

resolve doubts in favor of the exercise of the right whenever possible." (*California Cannabis Coalition v. City of Upland* (2017) 3 Cal.5th 924, 934; see also *Associated Home Builders*, *supra*, 18 Cal.3d at p. 591.)

Nevertheless, " '[w]hile it has been generally said that the reserved power of initiative and referendum . . . is to be liberally construed to uphold it whenever reasonable [citations], it is established beyond dispute that the power of referendum may be invoked only with respect to matters which are strictly legislative in character [citations]. Under an unbroken line of authorities, administrative or executive acts are not within the reach of the referendum process [citations]. The plausible rationale for this rule espoused in numerous cases is that to allow the referendum or initiative to be invoked to annul or delay the executive or administrative conduct would destroy the efficient administration of the business affairs of a city or municipality [citations].' " (*City of San Diego v. Dunkl* (2001) 86 Cal.App.4th 384, 399 (*Dunkl*); see also *San Bruno Committee for Economic Justice v. City of San Bruno* (2017) 15 Cal.App.5th 524, 530 (*San Bruno*) ["Courts have long observed that '[t]he power of referendum applies only to acts that are legislative in character; executive or administrative acts are not within the scope of that remedy' "]; *Yost v. Thomas* (1984) 36 Cal.3d 561, 569 (*Yost*) ["The powers of referendum and initiative apply only to legislative acts by a local governing body"]; *Housing Authority v. Superior Court* (1950) 35 Cal.2d 550, 557 ["The power of referendum applies only to acts that are legislative in character; executive or administrative acts are not within the scope of that remedy"]; accord, *Move Eden I*, *supra*, 100 Cal.App.5th at pp. 275–276.) " 'This legislative-administrative dichotomy reflects a determination to balance the ideal of direct legislation by the people against the practical necessity of freeing municipal governments from time consuming and costly

11

referenda on merely administrative matters.' " (*San Bruno*, at p. 530; accord, *Move Eden I*, at p. 276.)

"Although the test is not precise and the published decisions reflect some inconsistency in approach, '[l]egislative acts generally are those which declare a public purpose and make provisions for the ways and means of its accomplishment. Administrative acts, on the other hand, are those which are necessary to carry out the legislative policies and purposes already declared by the legislative body.' [Citation.] Alternatively stated, ' "[t]he power to be exercised is legislative in its nature *if it prescribes a new policy or plan*; whereas, it is administrative in its nature *if it merely pursues a plan already adopted* by the legislative body itself, or some power superior to it." ' " (*San Bruno*, *supra*, 15 Cal.App.5th at p. 530; accord, *Move Eden I*, *supra*, 100 Cal.App.5th at p. 276.)

III.    *The City Did Not Violate Section 9241*

The trial court concluded the City failed to comply with the writ of mandate because it did not, in effect, "entirely repeal" the 2022 Resolution within the meaning of section 9241, and because adoption of the 2024 Resolution violated section 9241's one-year stay provision. Both arguments turn on the proper construction of section 9241.

It is important to make several observations at the outset. The underlying 2022 Agreement is an expansive agreement covering a wide range of issues related to construction of the Project, an affordable workforce housing development in the City's downtown. In *Move Eden I*, *supra*, 100 Cal.App.5th at page 277, this court held that only *one* aspect of the agreement involved legislative determinations—to wit, "The 2022 Agreement, for the first time, authorizes the construction of and improvements to [Veterans] Park" as part of the Project. That determination meant that

12

adoption of the 2022 Resolution, which approved the 2022 Agreement, was a legislative act subject to challenge by referendum. (*Id.* at pp. 275–278.) But we were clear, in an unpublished portion of the opinion, that that did not mean that approval of the remaining aspects of the 2022 Agreement was legislative, pointing out that Move Eden had cited "no authority that or reasoning why a determination that is otherwise administrative may be treated as legislative because the provision at issue is part of a larger agreement, the approval of which is legislative due to a wholly unrelated provision." In the present appeal, Move Eden emphasizes that the 2024 Resolution approves virtually the same underlying agreement as the 2022 Resolution, with only the Veterans Park provisions removed. But Move Eden does not dispute that the remaining aspects of the agreement involve only administrative determinations and that those determinations implement legislative decisions made long before the 2022 Resolution and never challenged by referendum.[9] And Move Eden does not dispute that the referendum power applies only to legislative acts, and it does not suggest that the 2024 Resolution, which involves only administrative acts, is

---

[9] Move Eden argued in the previous appeal that approval of loan terms and an indemnification provision in the 2022 Agreement was legislative, but our rejection of that contention in the unpublished portion of *Move Eden I* is now law of the case. (*People v. Boyer* (2006) 38 Cal.4th 412, 441.) Move Eden relies on a footnote in the same unpublished portion of *Move Eden I* to argue that the law of the case doctrine somehow precludes the City's argument that the trial court erred in applying section 9241 to the 2024 Resolution. Move Eden's argument is misplaced because we did not address section 9241 in *Move Eden I*. In the footnote at issue, we addressed only the City's new request at oral argument that it be permitted to proceed with a referendum on only the Veterans Park provisions, and we observed only that the City failed to provide authority supporting the request.

independently subject to challenge by referendum. These considerations are critical to our application of section 9241 in the present case.

A. *The 2022 Resolution Was "Entirely Repealed"*

Section 9241 provides that, "[i]f the legislative body does not entirely repeal the ordinance against which the petition is filed, the legislative body shall submit the ordinance to the voters . . . ." It is undisputed that the City did, literally, "entirely repeal" the 2022 Resolution. But the trial court concluded the City did not repeal the resolution within the meaning of section 9241 because the City also adopted the 2024 Resolution, which reaffirmed the 2022 Agreement except for the provisions relating to Veterans Park. The trial court erred.[10]

Move Eden relies on the decision in *County of Kern v. T.C.E.F., Inc.* (2016) 246 Cal.App.4th 301, 308 (*TCEF*). There, the Kern County Board of Supervisors adopted an ordinance banning medical marijuana dispensaries. (*Id.* at p. 310.) After voters challenged the ordinance through a referendum petition, the county opted to repeal not only the ordinance, but the entire section of the county's ordinance code addressing medical marijuana dispensaries, resulting in a de facto ban. (*Id.* at p. 312.) In considering whether the ordinance had been entirely repealed,[11] the court reasoned that

---

[10] We have reviewed the legislative history to the 1911 enactment (Stats. 1911, ch. 33) that added the "entirely repeal" language now in section 9241 (see fn. 8, *ante*), but we found nothing helpful to resolving the issues in the present appeal.

[11] *TCEF* applied section 9145, which governs the referendum process for counties. Like section 9241, section 9145 uses the phrase "entirely repeal." "Section 9241 is more detailed than section 9145 because it includes a sentence that the ordinance repealed by the board and rejected by the voters 'shall not again be enacted by the legislative body for a period of one year.'" (*TCEF*, *supra*, 246 Cal.App.4th at p. 321, fn. 10.)

14

"the proper scope of the inquiry is the totality of the circumstances of a particular case," and that courts must look at "the *practical* effect" of the actions an agency takes "because substance, not form, is the proper test for determining the real character of conduct or a transaction." (*TCEF*, at pp. 322–323.) From that perspective, to "entirely repeal" an ordinance, an agency must "(1) revoke the protested ordinance in all its parts and (2) refrain from additional action that has the practical effect of implementing the essential feature of the protested ordinance." (*Id*. at p. 323.) In *TCEF*, because the county's repeal of the prior code sections had the "practical effect of implementing the essential feature of the protested ordinance—namely, a ban on dispensaries," the county did not entirely repeal the ordinance. (*Id*. at pp. 324–325.)

Here, the City "revoke[d] [the 2022 Resolution] in all its parts." (*TCEF*, *supra*, 246 Cal.App.4th at p. 323.) The trial court so acknowledged, observing that the City adopted "a new resolution that repealed Resolution [No.] 2022-085" and the "parties all agree that these steps were consistent with, and would satisfy, the writ of mandate." Move Eden argues adoption of the 2024 Resolution rendered the repeal ineffective as to most aspects of the 2022 Agreement, but that is relevant to the second, "practical effect" aspect of the *TCEF* test, not to the question of whether the resolution was fully revoked.

In applying that second aspect, the critical task is identifying "the essential feature of the protested ordinance." (*TCEF*, *supra*, 246 Cal.App.4th at p. 323.) We conclude that the only reasonable understanding of "essential feature" is that, at a minimum, it must include a legislative act that made the prior ordinance subject to challenge by referendum in the first place. To conclude otherwise ignores that the entire rationale for the *TCEF* decision was protection of the referendum power, which only reaches legislative acts.

15

As the court explained, "it is reasonable to regard the protest petition as a challenge or legislative check aimed at the essential (i.e., important, principal) subject matter of the protested ordinance—the ban on medical marijuana dispensaries. We adopt a relatively narrow legal test as that test is sufficient to deal with the facts of this case, while serving the statutory purpose of protecting the referendum power." (*Id.* at p. 322; see also *id.* at p. 325 ["Allowing County to achieve the practical equivalent of a dispensary ban by alternate means would render section 9145's protections of the referendum power so ineffectual that the referendum process would no longer 'guarantee[] to the citizens an ultimate check on legislative power' "].)

It is critical to understand that *TCEF* involved unusual circumstances in which a legislative body was able to achieve the same legislative objective as a prior enactment by a subsequent enactment that was not substantially similar to the original enactment. (See *TCEF*, *supra*, 246 Cal.App.4th at p. 325 ["Under the unusual facts of this case, however, the board of supervisors' general authority to legislate is limited by the protections section 9145 affords the referendum process"].) Where a legislative body repeals a challenged ordinance but then takes another, different action that undermines the repeal of the prior legislative act, the legislative body effectively interferes with the referendum power. Here, the trial court concluded it was "too clever by half to say that the City 'entirely repealed' the original resolution when it immediately substituted almost all of the original language in the replacement resolution." But we understand the purpose of section 9241 differently. Because the administrative acts in the 2022 Resolution were not an essential feature of the resolution for purposes of section 9241, and because the 2024 Resolution does not have the "practical effect" of undermining repeal of the Veterans Park provisions (the only

16

legislative aspect of the prior enactment), the trial court improperly extended the referendum power to reach purely administrative acts when it concluded the City failed to entirely repeal the 2022 Resolution due to adoption of the 2024 Resolution.[12]

Finally, although Move Eden provides no reason why administrative acts not subject to the referendum power can be considered an "essential feature" of an ordinance for purposes of section 9241, Move Eden focuses on language in the 2024 Resolution that purports to leave undisturbed all parts of the 2022 Agreement other than the Veterans Park provisions.  In particular, the 2024 Resolution states, the "remaining language of the [2022] [A]greement remains in full force and effect as of the date the agreement was signed."  But, although that language undermines the practical effect of repeal of the 2022 Resolution as to the *administrative acts* therein, nothing in the 2024 Resolution undermines the repeal of the Veterans Park provisions, which are the only essential features of the 2022 Resolution for purposes of section 9241.

The trial court erred in concluding the City failed to "entirely repeal" the 2022 Resolution within the meaning of section 9241.

B.    *The 2024 Resolution Did Not Violate the Section 9241 Stay*

In the alternative, Move Eden contends that adoption of the 2024 Resolution violated the portion of section 9241 providing that "the ordinance shall not again be enacted by the legislative body for a period of one year

---

[12] See also the discussion below (Part III.B., *post*) regarding interpretation of the section 9241 stay provision.  The reasons for concluding that provision did not prohibit the 2024 Resolution—respecting the scope of the referendum power, preserving the ability of government to function, and providing a principled basis for decisionmaking—are equally applicable to construing the section 9241 repeal provision.

17

after the date of its repeal by the legislative body or disapproval by the voters." We reject the contention.

"The function of the stay provision is to enforce the electorate's power to approve or reject measures provisionally adopted by a legislative body *before* they take effect. If the stay provision were interpreted to apply only to the specific measure challenged by referendum, the referendum power could be 'completely nullified.' [Citation.] '[T]he legislative body could by merely amending [the challenged ordinance] in a minor way and adding additional matters, then adopt in its entirety the legislative act objected to in the referendum petition. If such were the law, the council merely by continuous amendment of that act could deprive the voters of ever having an act either repealed or brought to a vote.' [Citation.] For this reason, the stay is not confined to the specific ordinance and its exact terms. It extends to repassage of the challenged ordinance with minor amendments. This rule is 'inherent in the very principle of the referendum and the spirit of the section.' [Citation.] 'If such were not the case, no referendum could ever be brought to a conclusion, because a council could prevent it by recurrent amendments to the disputed legislative act.'" (*Lindelli*, *supra*, 111 Cal.App.4th at pp. 1109–1110.)

However, "[t]he stay provision does not tie a legislative body's hands entirely. It does not prevent a legislative body or a city council from adopting any [and all] measures involving the same subject matter. In determining whether a subsequently enacted ordinance violates the [section 9241] stay . . . , we ask 'whether the second legislative enactment is essentially the same as the first.'" (*Lindelli, supra*, 111 Cal.App.4th at p. 1110; see also *Rubalcava v. Martinez* (2007) 158 Cal.App.4th 563, 569–570 (*Rubalcava*).) "The legislative body may not violate that stay by enacting essentially

18

identical legislation on the same subject matter." (*Lindelli*, at p. 1111.) This rule is "an implied element of the constitutional provisions reserving the referendum power." (*Rubalcava*, at p. 573.)

In *Lindelli*, the Town of San Anselmo awarded a waste management franchise to a new provider in place of the incumbent; after opponents qualified a referendum on the franchise, the town accepted bids for an interim contract and then awarded the new provider the interim contract until the referendum election. (*Lindelli*, *supra*, 111 Cal.App.4th at pp. 1102–1103.) *Lindelli* held that the interim contract violated the section 9241 stay. The court focused "on the features that gave rise to popular objection," observing that it was the "change in provider, and not the length of the franchise grant, that inspired the referendum." (*Id.* at p. 1111.) Because "the interim contract differ[ed] from the original franchise only in the length of time covered," its adoption violated section 9241. (*Lindelli*, at p. 1111; see also *Martin v. Smith* (1959) 176 Cal.App.2d 115, 121 [the "essential features [of the original enactment] were the approval of the proposed commercial development and the granting of the lease and sublease"].)

The present case involves additional considerations not present in *Lindelli*. Move Eden points out that the 2024 Resolution "preserved the vast majority" of the 2022 Agreement; that the referendum objected to approval of the Project as a whole, not just to approval of Veterans Park; and that the 2024 Resolution restored the Project. However, the critical difference between the present case and *Lindelli* is that, in *Lindelli*, the service provider changes (in both the original and the subsequent enactment) were

19

"legislative" decisions "subject to the referendum process."[13] (*Lindelli, supra,* 111 Cal.App.4th at p. 1113.) In the present case, the determination to move forward with the Project as a whole (but without Veterans Park) was *not* subject to challenge by referendum, and the 2024 Resolution contains no legislative acts. As the City points out, and Move Eden does not dispute, "the legislative polices supporting those administrative actions to implement the housing project . . . had been approved long before" the 2022 Resolution and were not "targeted by a referendum effort at the time of adoption." (See, e.g., *San Bruno, supra,* 15 Cal.App.5th at p. 533 ["We agree with the City that the adoption of the resolution was an administrative act because it implements prior legislative action"]; *Dunkl, supra,* 86 Cal.App.4th at p. 400 ["Once a legislative policy has been established, the administrative acts that follow therefrom are not subject to referendum or initiative"]; *Lincoln Property Co. No. 41, Inc. v. Law* (1975) 45 Cal.App.3d 230, 235 ["since the legislative objectives and conditions of development were laid down" in a previous enactment, and the challenged acts "were done merely to carry out the legislative policies already declared, the [challenged resolution] must be classified as a purely administrative act which is not subject to the referendum process"].)

In interpreting the stay provision in section 9241, courts have interpreted the word "ordinance" to include not only an *identical* enactment but also a subsequent enactment that is "essentially the same" as the original

---

[13] *Lindelli* noted, " '[t]he rule is firmly established that the granting of a franchise by a city or county is a legislative act.' " (*Lindelli, supra,* 111 Cal.App.4th at p. 1113.)

enactment.[14]  The present case requires that we further construe section 9241, to determine whether a subsequent ordinance may be considered "essentially the same" if it does not include any legislative act that made the original enactment subject to the referendum power in the first place.[15]  We conclude that, in determining whether a subsequent enactment is essentially the same, the relevant comparison is with the legislative act or acts in the

[14] The roots of the "essentially the same" formulation are in *In re Stratham* (1920) 45 Cal.App. 436, decided prior to the enactment of the stay provision in 1949 (Stats. 1949, ch. 194, § 1; see fn. 8, *ante*).  In *Stratham*, the court stated, "The council may, however, deal further with the subject matter of the suspended ordinance, by enacting an ordinance essentially different from the ordinance protested against."  (*Stratham*, at p. 440.)  *Stratham's* "essentially different" language evolved into the "essentially the same" formulation.  (See *Rubalcava, supra,* 158 Cal.App.4th at pp. 569–570, 574–575.)  We have reviewed the legislative history to the 1949 enactment, and have found nothing helpful to resolving the issue in the present appeal.  Nevertheless, we may presume that, in enacting the language now in section 9241, the Legislature was aware of *Stratham* and expected that courts would construe the "ordinance" that could not be re-enacted in a consistent manner.  (*White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 572 ["when the Legislature amends a statute, we presume it was fully aware of the prior judicial construction"].)  And, of course, courts have continued to use *Stratham's* approach in applying the language now in section 9241.  In any event, our ultimate task is to further construe and apply section 9241 in the circumstances of this case in light of the referendum power the statute seeks to effectuate.

[15] The parties discuss the decision in *Gilbert v. Ashley* (1949) 93 Cal.App.2d 414, 415, on this point, but that case is inapposite.  There, the subsequent ordinance was not subject to referendum under an exception for tax levies for the usual current expenses of a city (*id.* at p. 415), so the court did not address the legislative-administrative dichotomy.  And, although the court observed that the enactments were materially different (*ibid.*), the court had no occasion to consider whether the essential aspects of an ordinance are the legislative acts that made the original ordinance subject to the referendum power.

original enactment that made the enactment subject to the referendum power. Several principles lead us to conclude this is the most reasonable interpretation of section 9241.

First, section 9241 is part of the referendum process and it must be construed accordingly. Just as "[t]he Elections Code . . . may be reasonably interpreted as providing for the use of referendum only with respect to such ordinances as are constitutionally subject to referendum" (*Geiger v. Board of Supervisors* (1957) 48 Cal.2d 832, 839 (*Geiger*)), the section 9241 stay provision should be construed to prohibit an enactment only where necessary to protect the referendum power. (See also *People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 193 ["wherever possible, 'we will interpret a statute as consistent with applicable constitutional provisions, seeking to harmonize Constitution and statute' "].) As noted previously, it is well-established that the referendum power extends only to enactments that are an exercise of a governing body's legislative powers. (*Dunkl, supra*, 86 Cal.App.4th at p. 399 [" 'it is established beyond dispute that the power of referendum may be invoked only with respect to matters which are strictly legislative in character [citations]. Under an unbroken line of authorities, administrative or executive acts are not within the reach of the referendum process' "]; see also, e.g., *Yost, supra*, 36 Cal.3d at p. 569; *Move Eden I, supra*, 100 Cal.App.5th at pp. 275–276; accord, *Wilde, supra*, 9 Cal.5th at p. 1115, fn. 2.) Thus, construing the section 9241 stay to prohibit only enactments that readopt a *legislative* aspect of a challenged ordinance (either expressly or effectively) is consistent with the reach of the referendum power. In contrast, Move Eden's construction of section 9241 would be an unprecedented extension of the referendum power to prohibit entirely administrative acts.

Second, Move Eden's interpretation of section 9241 would undermine essential government functions for no purpose consistent with the referendum power. As the Supreme Court observed in construing the scope of a provision exempting tax levies from referendum, "[i]f essential governmental functions would be seriously impaired by the referendum process, the courts, in construing the applicable constitutional and statutory provisions, will assume that no such result was intended." (*Geiger*, *supra*, 48 Cal.2d at p. 839; accord, *Wilde*, *supra*, 9 Cal.5th at p. 1123.) In the present case, it is undisputed that the legislative decisions about the Project that are implemented by the administrative provisions in both the 2022 and 2024 Resolutions were made long before adoption of the 2022 Resolution and were *not* challenged by referendum. Although the referendum challenging the 2022 Resolution had the effect of delaying the administrative acts in the resolution as well as the new legislative approval of Veterans Park, the referendum power does not justify Move Eden's effort to frustrate the City's ability to take *administrative actions* to move forward with previously approved aspects of the Project *following repeal* of the 2022 Resolution.

"California has a housing supply and affordability crisis of historic proportions." (Gov. Code, § 65589.5, subd. (a)(2)(A); see also *California Renters Legal Advocacy & Education Fund v. City of San Mateo* (2021) 68 Cal.App.5th 820, 830; *Anderson v. City of San Jose* (2019) 42 Cal.App.5th 683, 705–712.) As Eden Housing points out and Move Eden does not dispute, delays in construction projects can be very costly and, in some circumstances, can threaten the viability of a project. (See, e.g., Note, *Addressing Challenges to Affordable Housing in Land Use Law: Recognizing Affordable Housing as a Right* (2022) 135 Harv. L.Rev. 1104, 1113, fn. 70 ["some have observed that when it comes to authorizing development, 'delay is as good as denial,'

[citation], and opponents of affordable housing have actively pursued delay as a method of preventing development, [citation]. In addition to the costs of fighting for authorization, delay creates a risk of rising construction costs and changed market conditions."].) The City's compliance with this court's decision in *Move Eden I* by eliminating from the 2024 Resolution the sole legislative determination in the 2022 Resolution is sufficient to protect the referendum power. Move Eden's construction of section 9241 would allow the referendum power " 'to be invoked to annul or delay . . . administrative conduct' " and " 'would destroy the efficient administration of the business affairs of' " the City as to a long-planned affordable workforce housing development, for no purpose consistent with the referendum power. (*Dunkl*, *supra*, 86 Cal.App.4th at p. 399; see also *Simpson v. Hite* (1950) 36 Cal.2d 125, 134 ["The initiative or referendum is not applicable where 'the inevitable effect would be greatly to impair or wholly destroy the efficacy of some other governmental power, the practical application of which is essential' "]; accord, *Wilde*, *supra*, 9 Cal.5th at p. 1124, fn. 9.) It would be unreasonable to conclude that was the intent behind section 9241.[16]

Finally, Move Eden's construction of section 9241, focusing on the quantitative similarities between the 2022 and 2024 Resolutions *as a whole*, fails to provide a principled basis for decisionmaking. Under its approach,

---

[16] To be clear, we need not and do not rely on a "broad proposition that the powers of direct democracy are not to be interpreted to defeat essential government functions." (*Wilde*, *supra*, 9 Cal.5th at p. 1124, fn. 9.) As we have explained, the 2024 Resolution is *outside* the scope of the referendum power, so our holding does *not* impinge on the constitutional powers of direct democracy. Nevertheless, that Move Eden's construction of section 9241 would disrupt essential government functions for no purpose consistent with the referendum power is a relevant consideration in determining whether the Legislature intended to prohibit enactments like the 2024 Resolution.

24

what percentage of a resolution must be changed in order to avoid a determination that a subsequent enactment is "essentially the same"? Could the City have enacted a resolution that *only* readopted the Veterans Park provisions? Such a narrow enactment would not be similar in scope or content to the expansive 2022 Resolution, but it would be absurd to conclude the City could readopt the single legislative determination that made the original resolution subject to the referendum power. In contrast, our construction of section 9241 provides a bright line for decisionmaking by making it clear that the focus must be on whether the subsequent enactment effectuates a legislative act in the repealed enactment. (See *People v. Coronado* (1995) 12 Cal.4th 145, 151 [" 'We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences' "].)

In arguing the section 9241 stay provision reaches administrative actions, Move Eden relies heavily on one sentence from the Supreme Court's decision in *Orange Citizens for Parks & Recreation v. Superior Court* (2016) 2 Cal.5th 141, 160. But the Court there addressed an entirely different issue. In *Orange Citizens*, the City of Orange amended its general plan to permit the development of residential housing in an area previously designated for a golf course or open space. (*Id.* at pp. 146–150.) When a group of citizens qualified a referendum to challenge the amendment, the city took the position that (1) a 1973 resolution that was adopted but never implemented through changes to the city's maps permitted residential housing in the designated area; and (2) the referendum was, therefore, irrelevant since the challenged recent amendment "was not required to permit" the development. (*Id.* at pp. 147, 150.) The main question addressed by *Orange Citizens* was

25

"whether the 1973 resolution [was] part of the [c]ity's current general plan." (*Id.* at p. 146.) The Supreme Court ruled it was not, in light of the voters' rejection of the more recent general plan amendment in the referendum election. (*Id.* at pp. 156–157, 160.) In that very different context, *Orange Citizens* stated the sentence relied on by Move Eden: "If 'legislative bodies cannot nullify [the referendum] power by voting to enact a law identical to a recently rejected referendum measure,' then the City [of Orange] cannot now do the same by means of an unreasonable 'administrative correction' to its general plan undertaken ' "with intent to evade the effect of the referendum petition." ' " (*Id.* at pp. 146, 150, 160.) But the Supreme Court did not apply section 9241, and the decision does not support Move Eden's argument that the City was prohibited from taking *valid* administrative actions to implement *long-approved* legislative determinations no longer challengeable by referendum. (*Rattagan v. Uber Technologies, Inc.* (2024) 17 Cal.5th 1, 39 [" 'It is axiomatic . . . that a decision does not stand for a proposition not considered by the court' "].)

We also observe that, in applying the "essentially the same" test, the *Rubalcava* and *Lindelli* courts addressed legislative acts in *both* the original and subsequent enactments, and the issue was whether the subsequent enactments retained the essence of the legislative acts the voters objected to. (*Rubalcava*, *supra*, 158 Cal.App.4th at p. 578; *Lindelli*, *supra*, 111 Cal.App.4th at pp. 1111–1112; see also *Rubalcava*, at pp. 574–578 [summarizing other cases].) In that context, it was appropriate to focus on "the objectionable features of the initial ordinances." (*Rubalcava*, at p. 578; see also *Lindelli*, at p. 1111.) But because the only legislative acts in the 2022 Resolution were approval of the Veterans Park provisions, and because the 2024 Resolution contains no legislative acts, the present case is

26

fundamentally different than those cases. For purposes of applying the section 9241 stay, it is of no moment that the supporters of the referendum here may have been motivated by opposition to the Project as a whole, because the legislative determinations underlying the Project as a whole (excepting Veterans Park) were not subject to challenge by referendum.

In conclusion, we construe "ordinance" as used in the phrase "the ordinance shall not again be enacted by the legislative body for a period of one year" (§ 9241) to refer to a subsequent enactment that is "essentially the same" with respect to a legislative act or acts that made the original enactment subject to the referendum power in the first place. A subsequent enactment violates section 9241 if, during the stay period, it readopts one or more legislative decisions in an identical or insufficiently modified form (as in *Lindelli*, *supra*, 111 Cal.App.4th 1099). But section 9241 does not prohibit a city from readopting administrative acts that do not have the effect of undermining the stay as to any legislative act in the original enactment.[17]

By giving full effect to the voters' ability to challenge approval of Veterans Park—the *only* legislative act in the 2022 Resolution—this court complies with its duty to " 'jealously guard' " and " 'liberal[ly]' " construe the referendum power. (*Associated Home Builders*, *supra*, 18 Cal.3d at p. 591; see also *County of Kern*, *supra*, 46 Cal.App.5th at p. 101 [stating that "vigilant protection" does not "equate [to] . . . expanding the referendum power so it restricts legislative bodies" beyond the degree mandated by the

---

[17] Move Eden argues the City may not ultimately be able to proceed with the Project without Veterans Park. We need not address that assertion because it does not inform our construction of section 9241. That is, even if the Project cannot proceed to completion without the park, that does not change the fact that the 2024 Resolution is outside the scope of the referendum power.

constitution].)  Move Eden offers no reason why the City was prohibited from taking administrative acts necessary to implement legislative policies that had been adopted long before the 2022 Resolution, and Move Eden offers no reason why such a result would be consistent with the constitutional referendum power.  Extending section 9241 to reach the 2024 Resolution's administrative acts would not protect the referendum power; instead, it would permit Move Eden to *improperly* obstruct the Project as a whole.  The trial court's order is reversed.

## DISPOSITION

The trial court's order granting Move Eden's motion for an order compelling the City to comply with the writ of mandate is reversed.  The matter is remanded to the trial court with directions to vacate the order and to enter a new order denying the motion.  Costs on appeal are awarded to the City and Eden Housing (Cal. Rules of Court, rule 8.278(a)(3)).

SIMONS, J.

We concur.

JACKSON, P. J.
CHOU, J.

28

## Move Eden Housing et al. v. City of Livermore et al. (A171937)

Trial Court:   Superior Court of California, County of Alameda

Trial Judge:   Hon. Michael M. Markman

Counsel:    Jason Alcala, City Attorney, Katherine Mirassou, Assistant City Attorney; Richards, Watson & Gershon, T. Peter Pierce and Steven A. Nguy for Defendants and Appellants.

      Nielsen Merksamer, Sean P. Welch, David J. Lazarus; Cox, Castle & Nicholson, Andrew B. Sabey, Scott B. Birkey and Robbie C. Hull for Real Party in Interest and Appellant.

      Latham & Watkins, Winston P. Stromberg and Kevin A. Homrighausen for Plaintiffs and Respondents.